The State, *ex rel.* Hamilton, County Supt., *v.* Forkner, County Auditor.

THE STATE, EX REL. HAMILTON, COUNTY SUPERINTENDENT, *v.* FORKNER, COUNTY AUDITOR.

LIQUOR LAW.—*License Fees belong to County.*—*Repeal of Statute.*—Fees paid into a county treasury, for licenses to sell intoxicating liquors in that county, granted under the act of March 17th, 1875, 1 R. S. 1876, p. 869, belong, not to the permanent common school fund of the State, but to that county, there to be wholly expended for tuition purposes. Said act of 1875 impliedly repealed section 2 of the act of March 6th, 1865, 1 R. S. 1876, p. 778, as to the disposal of such license fees.

From the Madison Circuit Court.

*H. D. Thompson* and *A. C. Harris,* for appellant.

*M. S. Robinson, J. W. Lovett, N. B. Taylor, F. Rand* and *E. Taylor,* for appellee.

WORDEN, J.—The question presented by this case is, what is the legal destination of the fees paid into the county treasury for licenses to sell intoxicating liquors? Do they belong to the common school fund of the State, to be loaned out and the interest only expended for the purposes of tuition? or are they a part of the school revenue for tuition, to be expended as such? And, if school revenue for tuition, do they belong to the county where they are paid in and the licenses granted, or are they to be distributed throughout the State, as other school revenue for tuition?

The court below, as we understand the record, decided that they constituted a part of the common school fund of the State, to be loaned out, and the interest only applied to the purposes of tuition.

We have been furnished with an elaborate printed brief by counsel for the appellant, in which the legislation of the State, on the subject, is fully examined. Until a comparatively recent date, the fees for liquor licenses went into the county treasuries, for ordinary revenue purposes.

Thus, in the Revised Statutes for 1843, p. 235, sec. 165, it was provided that "There shall be assessed and paid into the county treasury, for county expenditures, the following taxes:     *     *     *     *     *

"2. For each license to vend or retail spirituous liquors, not less than ten nor more than two hundred dollars."

We believe that, before that time and since, down to 1859, whenever a license fee was required for retailing, it went into the county treasury for county purposes. In

1859 the former policy in that respect was changed, and it was provided in the act of March 5th, of that year, to regulate and license the sale of such liquors, 1 G. & H., p. 615, section 5, that the license fee, which was to be paid to the treasurer of the county, should be " applied and expended for common school purposes, in the same manner in which the revenues of the common school fund are, or may be expended."

Thus, the fund arising from this source was diverted from the use to which it had been theretofore applied when such license fee was required, and applied to the use of common schools. It would seem to have been the intention of the Legislature, from the language above quoted, that the fund arising from this source should be regarded, not as a part of the permanent common school fund, to be put at interest, but as part of the tuition revenue, to be distributed throughout the State, and expended as such.

But, if this construction of the above provision, standing by itself, should be regarded as doubtful, the matter was put at rest by the Legislature at its next session, in the passage of the act of March 11th, 1861, to provide for a general system of common schools, etc., Acts 1861, Reg. Sess., p. 68, the 2d, 113th, 114th and 115th sections of which made this fund a part of the common school revenue for tuition, and provided for its distribution among the several counties of the State.

In like manner, the 2d section of the act of March 6th, 1865, on the subject of common schools, 1 R. S. 1876, p. 778, provides that " the money and income derived from licenses for the sale of intoxicating liquors," among other moneys mentioned, " shall be denominated the school revenue for tuition," and other sections provide for its distribution among the several counties as such.

From the time when the license fee was first appropri-

ated to the use of common schools, down to the time when the liquor law of 1859, above noticed, was repealed by the act of February 27th, 1873, to regulate the sale of intoxicating liquors, etc., Acts 1873, p. 151, which required no license fee to be paid, the fund arising from that source did not constitute a part of the permanent common school fund, but a part of the school revenue for tuition; and it did not belong exclusively to the county in which it was paid, but was distributed to the several counties.

Here, it may be appropriately observed that the constitution leaves the Legislature free to appropriate this fund as that body may think best. The 8th article of the constitution enumerates certain funds, of which "the common school fund" shall consist, and provides that "The principal of the common school fund shall remain a perpetual fund, which may be increased, but shall never be diminished; and the income thereof shall be inviolably appropriated to the support of common schools, and to no other purpose whatever." But the fund arising from fees for liquor licenses is not among the funds thus enumerated.

This fund is not by the constitution made a part of the common school fund. The Legislature might, doubtless, should it think proper, make it a part of the common school fund, as the fund mentioned in the constitution may be increased, but never diminished; or it may make the fund a part of the school revenue for tuition, either to be used exclusively in the county where the fee is paid, or distributed to the several counties; or it might let the fund go into the treasury of the county where it is paid, for county revenue purposes.

The next and only remaining legislation having an important bearing upon the question is the temperance act of March 17th, 1875. 1 R. S. 1876, p. 869. This act revives the license system, requiring a fee to be paid therefor.

The fee, it is provided by the fifth section of the act, is " to be paid into the school fund of the county in which such licenses are obtained."

From the repeal of the liquor law of 1859 by that of 1873, which required no fee for the permit, there was no fund arising from this source to be distributed to the several counties under the provisions of the school law of 1865. Then, when the temperance act of 1875 was adopted, the Legislature said, not as in the act of 1859, that the fee should " be applied and expended for common school purposes, in the same manner in which the revenues of the common school fund are, or may be expended," but that it was " to be paid into the school fund of the county in which such licenses are obtained."

The language of the act of 1875 shows, as we think, an intent to change the policy theretofore pursued in respect to this fund. It is " to be paid into the school fund of the county in which such licenses are obtained." This language, it seems to us, utterly precludes the idea that the fund is to be regarded as part of the permanent common school fund. The latter fund belongs to the State. *Fry* v. *The State*, 27 Ind. 348.

There is, strictly, so far as we are advised, no such fund as " the school fund of the county; " but the Legislature intended something by the language employed, and it is our province to discover that intention. " In statutory exposition, the reason, the spirit, the intention of the law, is above the mere cavil about words. The chief thing to be explored is the intention. This the judiciary is to seek in the history of legislation ; in the objects contemplated, the evils to be corrected, and the remedies provided." STUART, J., in *Spencer* v. *The State*, 5 Ind. 41, 54.

We think, from the general course of legislation on the subject and the language employed in the act of 1875, and its wide departure from that in the act of 1859, that the

Legislature intended that the fund arising from such license fees should remain in the counties where they are paid in and the licenses obtained, for the use of common schools, to be expended therein as other school revenue for tuition is expended, and not be distributed to the several counties, as had been the case in respect to license fees paid in under the act of 1859. The words employed do not very clearly express these ideas, but they can mean nothing else. The phrase " to be paid into the school fund of the county," though there may be no fund known to the law as " the school fund of the county," clearly imports that the fund is to be retained in the county and used therein for the support of common schools.

The mistaken assumption in the words employed, that there was a fund known as " the school fund of the county," does not very materially obscure the meaning, and cannot defeat the intention of the Legislature. The real intention, when accurately ascertained, will always prevail over the literal sense of terms. *Shoemaker v. Smith,* 37 Ind. 122. In the case just cited, effect was given to the intention of the Legislature where the statute had used the term, " The Board of Sinking Fund Commissioners," there being no such board, intending thereby to designate the officer having control of the fund, who was the Auditor of State.

We are more inclined to favor the construction which we place upon the statute, as it seems to us to be eminently just and proper that the fund arising from this source should be expended in the counties where it is paid. This fund is not raised by taxation upon property, which, it is thought, should contribute equally, so far as taxation is necessary, to the education of the children of the entire State. It is voluntarily paid, for the privilege of carrying on a particular business in the county where it is paid. It is supposed by many that the business itself entails some

evils upon the community in which it is carried on ; and, if so, the expenditure of the fund in the education of the young of that community has some tendency to counteract those evils.

We are advised that the officers having the management of the fund, acting under the advice of the Attorney General, have given the act of 1875 the same construction which we have placed upon it; and that, under that construction, an aggregate sum approximating $1,000,000 has been paid into the different county treasuries, and expended in the counties where received, for tuition purposes. Under these circumstances, it would require a clear case to justify the placing of a different construction upon the law.

We think the provisions of the school act of 1865 in relation to the distribution of this fund among the several counties were impliedly repealed by, as being entirely inconsistent with, the act of 1875, providing that the license fees should " be paid into the school fund of the county in which such licenses are obtained."

For these reasons we are of the opinion that the court below erred.

The judgment below is reversed, with costs, and the cause remanded, for further proceedings in accordance with this opinion.