No. 10,031½.

THE STATE, EX REL. BALDWIN, ATTORNEY GENERAL, *v.* THE BOARD OF COMMISSIONERS OF THE COUNTY OF MARION.

ATTORNEY GENERAL.—*Common School Fund.*—*Property Found on Bodies by Coroner.*—The proceeds of effects found by the coroner on the bodies of dead persons do not belong to the common school fund, but go to the support of the common schools of the county, and a suit to compel its proper application can not be prosecuted on the relation of the Attorney General.

SAME.—*Costs.*—There is no error in refusing to render a personal judgment for costs against the Attorney General, where he, on behalf of the State, unsuccessfully prosecutes a suit on his relation as an officer, against a county, involving the right to public moneys.

From the Marion Circuit Court.

*D. P. Baldwin*, Attorney General, for appellant.

*A. C. Harris*, for appellee.

NIBLACK, J.—The State, on the relation of Daniel P. Baldwin as Attorney General, filed a claim against Marion county before the board of commissioners of that county, but the claim was rejected by the board.

The State appealed to the circuit court, where an amended complaint was filed, to which a demurrer was sustained by that court, and where there was final judgment upon demurrer in favor of the board of commissioners. The court, however, upon motion, refused to tax the costs against the relator personally.

Error is assigned upon the sustaining of the demurrer to the complaint as amended, and cross error is assigned upon the decision of the court refusing to tax the costs against the relator.

The substantial part of the amended complaint was as follows:

" The relator says that he is the Attorney General of the State of Indiana, duly elected and qualified and occupying said office; that the officers of Marion county, Indiana, to wit, the treasurers thereof, within the last twenty years, have collected from the proceeds of coroners' inquests, and from money and valuables found upon the dead bodies of persons dying in Marion county, Indiana, by violence or casualty, within twenty years last past, over and above the burial expenses, and which have not been called for or claimed by the legal representatives of such decedents, the sum of $687.77; that by law said money belongs to the common school fund, or to the common schools of Marion county, Indiana, and that it was and is the duty of said treasurers to loan the same and pay over the interest thereof to the schools of said county; that the interest upon said funds amounts to $905.94; that neither principal nor interest has ever been applied to common schools; that this relator has demanded of said board of commissioners of Marion county, that the statutes made and provided in the premises shall be carried out, and said moneys be set apart for the use of common schools, which said board refuses to do, or to account for the same, or to account in any way for the interest thereof, claiming that said moneys belong to the said county, and pleading to said demand the statute of limitations."    Here followed an itemized statement of the amounts received by the county treasurers from the coroners of Marion county, and the interest claimed to be due on said amounts, arising from money and valuables found upon dead bodies at inquests, making an aggregate of $687.77 received by said treasurers, and of $905.94 interest demanded thereon.    " Wherefore the relator asks that the court will make an order that an accounting be had in the

premises, and that said moneys, principal and interest, be invested for the benefit of the common schools of Marion county, and be taken from the county fund, where they now are, and declared to be held in trust for the benefit of said common schools.    And the relator asks for costs and other proper relief in the premises."

The law defining the powers and duties of the Attorney General, which was in force when this action was commenced, provides that " It shall be the further duty of the Attorney General to ascertain, from time to time, the amounts paid to any public officer of the State or any county officer or other person, for unclaimed witness fees, court docket fees, licenses, money unclaimed in estates or guardianships, fines or forfeitures, or moneys that escheat to the State for want of heirs, or from any other source, where the same is, by any law, required to be paid to the State or to any officer in trust for the State; and in all cases where the officers whose duty it shall be to collect the same shall fail, neglect, or refuse, for twelve months after the cause of action in favor of the State shall have accrued, or shall fail, neglect, or refuse, to sue for and proceed to recover any property belonging to or which may escheat to the State, the said Attorney General shall institute, or cause to be instituted and prosecuted, all necessary proceedings to compel the payment of or recovery of any such property."    R. S. 1881, section 5668.

The eleventh section of "An act prescribing the powers and duties of coroners," approved May 27th, 1852, as amended by the act of March 29th, 1879, provided that where there was no known person lawfully authorized to take possession of any money or other valuables, found with any dead body, the coroner should immediately deliver such money or other valuables to the treasurer of the county, who was required to deliver the same to any person legally authorized to receive it or them, within one year thereafter, first retaining so much as was necessary to pay the expenses of the coroner's inquisition and funeral expenses of the body.

Section twelve of the same act further provided that it should be the duty of such treasurer, if the money which thus came into his hands should not be called for within one year from the time of his receiving the same, "to loan it out on interest of not less than seven per centum per annum, to be applied to common schools, equally to be divided among the townships of said county." 2 R. S. 1876, p. 20; Acts 1879, p. 105.

On behalf of the Attorney General, it is conceded that the unclaimed moneys received by the county treasurers from the coroners are not expressly made a part of the permanent school fund of the State by the eighth article of the State Constitution, but it is claimed that section twelve of the coroner's act, *supra,* which was approved May 27th, 1852, transferred and set apart those moneys to the common school fund, and that, under the operation of the third section of that article of the Constitution, such moneys can not now be diverted to any other purpose, and that, by the provision of the statute first above quoted, it is made the duty of the Attorney General, when such moneys are applied to other than common school purposes, to institute proceedings, in the name of the State, to reclaim said moneys and to require that the accrued as well as the accruing interest, for which the counties are responsible, shall be devoted to the support of the common schools under the general school laws of the State.

As has been seen, the Attorney General is only authorized to sue for and to recover such money and property as the State is entitled to receive, or as some officer is authorized to hold in trust for the State.

Section twelve, *supra,* does not purport to set apart either the principal or the interest of the money in question to the general school fund of the State, or to confer upon any officer of the State any authority over it. It permits the principal to remain in charge of the respective county treasurers, and expressly directs that the interest shall be divided between the several townships of the proper county, thus necessarily

imposing upon the counties, and not upon the State, the duty of distributing the interest to the townships entitled to receive it. *State, ex rel. Hamilton,* v. *Forkner,* 70 Ind. 241.

We are, therefore, unable to give to that section any construction which confers upon the Attorney General the right to prosecute any suit concerning the money, whether principal or interest, to which it has reference.

It is further claimed, on behalf of the Attorney General, that the failure of the persons entitled to receive the same, to call for the moneys paid over to the treasurer by the coroner, for one year after the treasurer has come into the possession of such moneys, works a forfeiture to the State of such unclaimed moneys, by which means they are carried into the general school fund of the State, and become moneys for which the Attorney General may prosecute an action, independently of section twelve, herein above referred to, in the name of the State.

Article eight of the Constitution, *supra*, declares that moneys arising " from all forfeitures which may accrue " shall constitute a part of the common school fund of the State, and, as has been shown, the Attorney General is, when others have failed for a time to do so, expressly authorized by the statute prescribing his duties, to sue for and to recover money due from forfeitures to the State, referring, as we construe the statute to mean, to the class of forfeitures mentioned in the Constitution.

Forfeitures are of different kinds. A forfeiture may be generally defined to be the loss of what belongs to a person in consequence of some fault, misconduct or transgression of law. In the connection in which the term " forfeitures " is used in the Constitution, it evidently means the loss of a certain sum of money as the consequence of violating the provisions of some statute, or of the refusal to comply with some requirement of law. Burrill's Law Dictionary, title Forfeiture. Under our present system of statutory laws, the term has a practical application mainly to forfeited recognizances.

When the money or property found with a dead body is delivered over to the county treasurer, he becomes its lawful custodian and entitled to hold it as a fund in his hands, as against every one except the real owner, and the failure of the owner to assert his right to such money or property can not, in the absence of a statute so declaring, work a forfeiture of the treasurer's authority to retain it under the law requiring him to take charge of it.

The cross error assigned by the appellee presents a question of some difficulty. The question of costs is one over which the courts in many cases have a discretion, and this being a case in which the State was practically the plaintiff, and one of its subordinate municipal corporations was defendant, involving questions concerning the custody and control of public funds, we do not feel at liberty to say that the court erred in refusing to render judgment against the relator for costs.

The judgment is affirmed, without costs.