Middleton *et al. v.* Greeson, Trustee, *et al.*

Filed March 3, 1886.

---

No. 12,725.

MIDDLETON ET AL. *v.* GREESON, TRUSTEE, ET AL.

TOWNSHIP TRUSTEE.—*Limitation on Power to Contract.*—Sections 6006 and 6007, R. S. 1881, limit the authority of township trustees to contract debts, whether on behalf of the civil or school township.

SAME.—*School-Houses.*—*Injunction.*—The trustee of a school township can not, under such statute, without an order from the board of commissioners authorizing it, contract a debt for the building of a school-house which will make the aggregate debts chargeable to the special school fund exceed the amount of that fund on hand and to be derived from the tax assessed against the township for the year in which the debt is to be incurred, and he may be enjoined from so doing by a taxpayer.

STATUTE.—*Construction.*—As to rules for the construction of statutes generally see opinion.

From the Howard Circuit Court.

*J. C. Blacklidge, W. E. Blacklidge* and *B. C. H. Moon,* for appellants.

*J. O'Brien* and *C. C. Shirley,* for appellees.

ZOLLARS, J.—This action was commenced by appellants against appellees, on the 24th day of August, 1885. The material averments of the complaint are correctly stated in appellant's brief, as follows:

"Appellants are taxpayers of Harrison School Township, in Howard county, Indiana, and are owners of property situate therein, which is subject to taxation. Appellee Greeson is the trustee of such school township, and is about to enter into a contract with the appellee Armantrout for the construction of a school-house in District No. 4, at the price of $2,-960. There is now a good brick house in such district. The special school fund of such township is now indebted $2,000, or more. If said house is built, it will increase the indebtedness chargeable to such fund to an amount at least $2,000 in excess of the amount now on hand belonging to such fund, and the amount to be derived from taxation for the year 1885. It is further alleged that said trustee had not procured an order from the board of commissioners of Howard county authorizing him to contract such indebtedness. Prayer for an injunction."

A demurrer to the complaint was sustained, and final judgment was rendered against the plaintiffs. The error assigned here is, that the court below erred in sustaining the demurrer.

The controlling question, and the only one we need decide, is, can the trustee of the school township, without an order from the board of county commissioners authorizing it, contract a debt for the building of a school-house, which will make the aggregate debts chargeable to the special school fund exceed the amount of that fund on hand, and to be derived from the tax assessed against the township for the year 1885, being the year in which the trustee was about to incur the debt for the building of the house?

It is claimed by counsel for appellants, that he can not. This claim rests, in part, upon the contention that if he has authority to contract debts in any case, that authority is limited by, and must be exercised under, the act of 1875. Acts 1875, p. 162 ; R. S. 1881, sections 6006, 6007.

The substance of those sections is, that township trustees can not contract debts on behalf of their township in excess of the fund on hand to which such debts are chargeable, and of the fund to be derived from the tax assessed against their townships for the year in which such debts are to be incurred, without first procuring an order from the board of county commissioners authorizing them to contract such debts ; and that, in order to procure such an order, they shall file a petition, setting forth the object for which the debts are to be incurred, and give twenty days notice of the filing of such petition.

It is further contended by appellants' counsel, that whatever doubt there might have been as to the intent and meaning of the above sections, that doubt has been settled in favor of their contention by a legislative interpretation, as expressed by the act of 1883. Acts 1883, p. 114. The title of that act is, "An act touching the duties of township trustees with reference to liquidating and contracting indebtedness of townships in certain cases."

The preamble recites that many townships had become indebted in excess of their present ability to pay and keep up the current expenses with the tax levy authorized by law.

The substance of the first section is, that in any such township, the trustee thereof may levy an additional tax of twenty cents on each one hundred dollars valuation of taxable property in such township, etc., for the debt of the school township, and a like amount for the civil township.

The substance of the second section is, that if any township trustee shall contract any debt on behalf of any civil or school township of which he may be trustee, contrary to the provisions of the above sections 6006 and 6007, he shall

be liable personally, and upon his official bond, to the holder of the contract.

It is contended by counsel for appellees, that the above sections 6006 and 6007 have reference only to the trustee of the civil townships, and hence do not limit the authority of the trustee of the school township in the contracting of debts; and further, that as they have no reference to the trustees of school townships, the act of 1883, *supra,* is not sufficiently specific and declarative to make them apply to such trustees.

In the case of *City of Valparaiso* v. *Gardner,* 97 Ind. 1 (6) (49 Am. R. 416), in speaking of the rules of construction, this court said: " While it is our duty to yield to the words of the Constitution, still, in determining what meaning they were intended to have, it is proper to consider the circumstances under which the provision was adopted and the object it was intended to accomplish.　Cooley Const. Lim. (5th ed ), 78, 79."

In the case of *Mayor, etc.,* v. *Weems,* 5 Ind. 547, it was said: "' When the words of a law are susceptible of two different senses, the court will adopt that sense which will not lead to an absurdity.' Smith Com. 664.　Again, ' it is the duty of the courts to execute all laws according to their true intent and meaning: that intent when collected from the whole and every part of a statute must prevail, even over the literal import of terms, and control the strict letter of the law, when the latter would lead to possible injustice and contradictions.' Smith Com. 662; 1 Kent Com. 462." See, also, *Board, etc.,* v. *Cutler,* 6 Ind. 354; *Stayton* v. *Hulings,* 7 Ind. 144.

In the case of *Maxwell* v. *Collins,* 8 Ind. 38, it was said: " It is a settled rule of interpretation of statutes, that the application of the words of a single statute may be enlarged or restrained to bring the operation of the act within the intention of the Legislature, when violence will not be done by such interpretation to the language of the statute."

See, also, *State, ex rel.,* v. *Mayor, etc.,* 28 Ind. 248; *Baker, Governor,* v. *Kirk,* 33 Ind. 517.

In the case of *Hedrick* v. *Kramer,* 43 Ind. 362, this court quoted with approval the following from Kent's Commentaries: " When the words are not explicit, the intention is to be collected from the context, from the occasion and necessity of the law, from the mischief felt, and the objects and the remedy in view; and the intention is to be taken or presumed, according to what is consonant to reason and good discretion. These rules, by which the sages of the law, according to Plowden, have ever been guided in seeking for the intention of the Legislature, are maxims of sound interpretation, which have been accumulated by the experience, and ratified by the approbation of ages." 1 Kent Com. 462.

In the case of *State, ex rel.,* v. *Denny,* 67 Ind. 148 (155), the following, from Blackstone's Commentaries, was quoted with approval: " There are three points to be considered in the construction of all remedial statutes; the old law, the mischief, and the remedy."

In the case of *Taylor* v. *Board, etc.,* 67 Ind. 383 (384), it was said : " It is a settled principle that, in construing a statute, the intention of the Legislature must govern. To ascertain this intention, we must look to the letter of the statute, to other statutes upon the same subject, * * * to their spirit and purpose, and harmonize what may appear to be conflicting, so as to bring them into concord with a general and uniform system."

In *Prather* v. *Jeffersonville, etc., R. R. Co.,* 52 Ind. 16, it was said: " So in case of doubt or uncertainty, acts *in pari materia,* passed before or after, and whether repealed or unrepealed, may be referred to in order to discern the intent of the Legislature in the use of particular terms; and, within the same rule and the reason of it, contemporaneous legislation, although not precisely *in pari materia,* may be referred to for the same purpose."

In the case of *State, ex rel.,* v. *Forkner,* 70 Ind. 241, it was

said : " The chief thing to be explored is the intention. This the judiciary is to seek in the history of legislation ; in the objects contemplated, the evils to be corrected, and the remedies provided." See, also, *Houk* v. *Barthold*, 73 Ind. 21.

In the case of *Bell* v. *Davis*, 75 Ind. 314, it was said : " The whole statute, together with its objects, the occasion and necessity which led to its enactment, the mischief intended to be remedied, and all like matters are to be considered in determining what construction it shall receive."

In the case of *Krug* v. *Davis*, 87 Ind. 590, it was said : " In giving a construction to a statute, we must always keep in view the palpable or presumable object the Legislature had in enacting it, and endeavor, so far as practicable, to make such an application of its provisions as will best promote the object of its enactment." See, also, *Smith* v. *Moore*, 90 Ind. 294 ; *Humphries* v. *Davis*, 100 Ind. 274 (50 Am. R. 788) ; *Hedderich* v. *State*, 101 Ind. 564 (51 Am. R. 768) ; *Storms* v. *Stevens*, 104 Ind. 46. See especially the discussion in the case of *Clare* v. *State*, 68 Ind. 17.

In the case of *State* v. *Canton*, 43 Mo. 48, it was said : " The point to be determined, in giving practical application and construction to a statute, is to look at the mischief or defect which existed at the passage of the act, and see what provision the law-making power has made to afford a remedy ; and it is the province of the courts to so construe the law as to advance the remedy and suppress the mischief. (1 Blackst. Com. 87.) It is an established rule, applicable to the construction of all remedial statutes, that cases within the reason though not within the letter of a statute shall be embraced by its provisions; and cases not within the reason, though within the letter, shall not be taken to be within the statute."

In the case of *People* v. *Lacombe*, 99 N. Y. 43, S. C., 1 N. E. Rep. 599, it was said : " In the interpretation of statutes, the great principle which is to control is the intention of the Legislature in passing the same, which intention is to be ascertained from the cause or necessity of making the

statute as well as other circumstances. A strict and literal interpretation is not always to be adhered to, and where the case is brought within the intention of the makers of the statute, it is within the statute, although by a technical interpretation it is not within its letter. It is the spirit and purpose of a statute which are to be regarded in its interpretation; and if these find fair expression in the statute, it should be so construed as to carry out the legislative intent, even although such construction is contrary to the literal meaning of some provisions of the statute. A reasonable construction should be adopted in all cases where there is a doubt or uncertainty in regard to the intention of the law-makers. These general rules are upheld by numerous authorities. (*People* v. *Commissioners of Taxes*, 95 N. Y. 558; *Burch* v. *Newbury*, 10 N. Y. 389; *Oswego Starch Factory* v. *Dolloway*, 21 N. Y. 461; *People* v. *New York Central R. R. Co.*, 13 N. Y. 78; *Donaldson* v. *Wood*, 22 Wend. 397; *Watervliet T. Co.* v. *McKean*, 6 Hill, 619; 3 Bingham, 193; *Commonwealth* v. *Kimball*, 24 Pick. 370.) While the rules stated are specially applicable in considering the phraseology of statutes, they may also be properly invoked where several statutes are passed relating to the same general subject."

Keeping in view the well settled rules of construction as announced in the foregoing cases, what was the intention of the Legislature in the enactment of sections 6006 and 6007, *supra?* In other words, are the words "township trustee" therein broad enough, and were they intended, to include the township trustee when acting as the trustee of the school township? Under our statutes, there are two corporations within the same territory; one the township proper, sometimes called the civil township, and, the other the school township. The first, for example, is called Harrison township, and the other Harrison school township. R. S. 1881, section 4437; *Steinmetz* v. *State, ex rel.*, 47 Ind. 465; *Carmichael* v. *Lawrence*, 47 Ind. 554; *Jackson Tp.* v. *Barnes*, 55 Ind. 136; *Wright* v. *Stockman*, 59 Ind. 65. And hence it

is, that where an action is brought against Harrison township, for example, it will be treated as being against the civil township, and not against the school township, because the name of the school township, in such case, would be Harrison school township. *Harrison Township* v. *McGregor*, 67 Ind. 380; *Utica Township* v. *Miller*, 62 Ind. 230; *McLaughlin* v. *Shelby Township*, 52 Ind. 114. But the questions, whether or not the two corporations are distinct, with different names, and whether, when the township is named, without the prefix school, it will be taken to be the civil township, are not the sole, nor the controlling questions here. The question here is, not so much what did the Legislature mean by the word " township " in the above sections 6006 and 6007, as what was meant and intended by the words " township trustee." While the two corporations are distinct, they have not separate officers. The township trustee is, by virtue of his office, the trustee of the school township. He is elected, gives bond and qualifies as township trustee. As stated in the case of *Inglis* v. *State, ex rel.*, 61 Ind. 212 (215), we take notice, as a matter of law, that a person is the trustee of the school township if he is the township trustee. It was accordingly held in that case, that the designation of the relator as " township trustee " was a sufficient designation of his official character to enable him to recover, as relator, the moneys due to each of the corporations, civil and school.

The legislation of the State clearly shows that the contracting of debts by township trustees, on behalf of both their school and civil townships, was regarded by the Legislature as a growing evil, and one that should be checked. We think too, that the legislation, and the use of the words " township trustee " therein, show that, generally, the Legislature regarded these words as sufficiently comprehensive and specific to include the township trustee in his dual capacity as trustee of the civil and school townships.

In 1873, the Legislature passed an act, entitled an act to authorize *township trustees* to levy an additional tax for the

purpose of paying, satisfying and liquidating debts made and contracted by *such trustee,* in constructing, repairing or completing school-houses, etc. The act followed the title. In the act, the words *township trustees* and *such trustees* are used as in the title. The words "school trustees," or "trustees of the school township," are not used at all. Acts 1873, p. 209; R. S. 1881, section 4471. Here, it is apparent that debts had been contracted for the building, etc., of school-houses. These debts must have been contracted by township trustees, acting as trustees of the school townships. They could not have contracted them as the trustees of the civil townships. Nor could they, as trustees of the civil townships, levy the additional tax authorized. That could only be done by them acting as the trustees of the school townships. Acts 1873, p. 70, sec. 12; R. S. 1881, sec. 4467.

This act is instructive in two respects : *First.* It shows that township trustees, acting as trustees of the school township, had been contracting debts on behalf of those townships beyond their ability to pay, without new and additional tax levies. *Second.* It shows that the Legislature used the words *township trustees* in the sense of trustees of the school townships ; in other words, used the words *township trustees* as embracing the trustees in their dual capacity of trustees for the civil and school townships.

The contracting of such debts as those provided for in the above act by township trustees, led to the enactment of the law of 1875. Sections 6006 and 6007, *supra.* That act, doubtless, was intended to check and remedy a growing evil. That evil, as evidenced by the act of 1873, *supra,* was the contracting of debts in the building, etc., of school-houses, etc., in excess of the funds at the command of the trustees. In the title of the act, and in the act, the words "township trustees" are used as in the act of 1873. It can hardly be supposed that the Legislature, with the evils before them, as evidenced by the act of 1873, intended by the act of 1875 to overlook those evils, and fix a limit and check upon town-

ship trustees, as trustees of the civil townships only. Indeed, experience has at all times shown that township trustees have abused their authority in connection with school matters more than in any other regard. Nor can it be reasonably supposed that in the act of 1875 the words "township trustees" were used in a more limited sense than in the act of 1873.

The evident purpose of the act of 1875 was to place a general limit and check upon township trustees, in the contracting of debts, in whatever capacity they may act, whether as trustees of the civil or school townships. The term "township trustee" is the general term, the name of the office, and the official title of the officer. That general title, as used in the act of 1875, embraces the officer in his dual capacity as trustee of the civil and school township. So the Legislature evidently intended, and so they used it in the act.

To hold that the act of 1875 places a limit upon township trustees when acting as the trustees of their civil townships only, we think would be to do violence to the purpose and intent of the Legislature, and to break down the barrier which that body intended to erect against extravagant and destructive contracts and expenditures, in excess of the particular fund on hand, and to be derived from the taxes of the year. There are many instances, aside from the act of 1873, *supra*, where the term "township trustee" is used in designating that officer acting in the capacity of trustee of the school township. See sections 4424, 4436, 4440, 4443, 4506, 4514, 4515, 4516, 4517, 4520, 4529, 4530, 4537. These instances lend aid to the conclusion that the term "township trustee," as used in the act of 1875, sections 6006 and 6007, R. S. 1881, was intended to be, and is, sufficiently comprehensive to embrace the officer in his double capacity as trustee of the civil and school township.

The act of 1883, *supra*, also uses the term "township trustee," as embracing that officer in his double capacity of trustee of the civil and school township. That act is also a legislative interpretation of the act of 1875, sections 6006 and

6007, R. S. 1881, and interprets them as applicable to the township trustee, whether acting for the civil or school township. That act further shows the continuing necessity for a check upon township trustees in the contracting of debts on behalf of school townships. It is in keeping with what seems to be the policy of recent legislation to put a limit upon the exercise of authority of school trustees in the contracting of debts for school-houses, etc. In 1879 the Legislature deemed it to be necessary to enact that school trustees of incorporated towns and cities shall not purchase grounds and erect school-houses without authority from the common council or board of town trustees. R. S. 1881, section 4491.

The simple interpretation of a law by a subsequent Legislature, although not controlling and not usually entitled to much weight, is yet, in cases of doubt, entitled to some weight. *Pike* v. *Megoun,* 44 Mo. 491 ; Sedgwick Construction of Stat. and Const. Law (3d ed., Pomeroy's notes), p. 214 ; *Coutant* v. *People,* 11 Wend. 511 ; *Dash* v. *Van Kleeck,* 7 Johns. 477.

The above considerations lead us to the conclusion that sections 6006 and 6007, *supra,* fix a limit upon the authority of township trustees to enter into contracts, whether on behalf of the civil or school township.

It is alleged in the complaint, as we have seen, that without any application to, or an order from, the board of county commissioners, the trustee Greeson was about to enter into a contract for the building of a school-house, the cost of which would largely exceed the amount of the special school fund on hand and to be derived from the tax levy of the year. The demurrer admitting these facts should have been overruled.

In the case of *Miller* v. *White River School Tp.,* 101 Ind. 503, the main question arose upon the evidence, which showed that the articles for which the obligation was given were received and retained by the township, and that the debt contracted did not exceed the amount of the special

fund on hand and to be derived from the tax of the current year. The case, moreover, was considered without reference to the act of 1883, because the contract was entered into before the passage of that act.

It is not necessary for us in this case to enter upon a review of our cases, and decide as to the general authority of the township trustee to contract debts on behalf of the school township. Nor is it necessary for us to decide as to whether or not a contract in violation of the provisions of sections 6006 and 6007, and of the act of 1883, *supra,* would be absolutely void. It is enough here that the trustee was threatening to contract a debt in violation of those statutes, and that a taxpayer may enjoin such unauthorized action on the part of the trustee.

The judgment is reversed, at the costs of appellees, and the cause is remanded, with instructions to the court below to overrule the demurrer to the complaint.

