Sarah R. HURT, Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 55A01–8912–CR–518.

Court of Appeals of Indiana, First District.

May 15, 1990.

Michael B. Weinberg, Gregory T. Lauer, Martinsville, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Wendy Stone Messer, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

BAKER, Judge.

Defendant-appellant, Sarah R. Hurt (Hurt), appeals her conviction for operating while intoxicated, a Class D felony.[1] We affirm.

At approximately 12:45 a.m. on March 23, 1989, Lacey Golden was awakened by his wife who informed him someone had driven through the front yard and hit a tree. Golden went outside to investigate and saw the car which had impacted against the tree. When he opened the car door, he observed Hurt lying down and smelled the strong odor of alcoholic beverages. He also saw empty beer cans in the back seat. His wife had already called the police and Golden proceeded to assist Hurt into his home. When Golden returned outside, Deputy Sheriff Keith was on the scene.

Deputy Keith had been dispatched to a property damage accident and observed a vehicle parked in the roadway on the right hand side. The car had sustained left rear damage, so Keith radioed for a wrecker. While he waited for the wrecker, Golden approached him and informed him of the car in his front yard which had hit the tree and the driver of which was presently in his house. Apparently after Hurt's car struck the vehicle on the roadway, it crossed the road, ran through Golden's fence and struck a tree a total of 265 feet away from the original point of impact. No skid marks were visible.

Keith accompanied Golden to his house nearby and spoke with Hurt. He asked her if she was injured and she responded that

---

1. IND.CODE 9–11–2–3.

she was sore, but did not want an ambulance. He asked her if she would accompany him to his vehicle to produce her registration, driver's license, and to assist in filling out an accident report. Keith observed her staggering from her vehicle to his and when she reached his vehicle she smelled of alcohol. Hurt then indicated she needed to go to the hospital. Keith transported her to the Morgan County Hospital and while enroute, Hurt attempted to light a cigarette in the car. Keith told her to put it out and she belligerently said, "No, I don't have to." She did ultimately throw the cigarette out the window. Keith read her the Implied Consent Law and Hurt indicated she would not take the test. Further down the road she decided she would take the test. She continued to argumentatively vacillate in her decision whether to take the breathalyzer test.

Upon arrival at the hospital, Hurt refused to submit to a blood test as requested by police. She was then examined by Dr. Kenneth Cloud (Dr. Cloud) for injuries. Following completion of the exam, he directed her to sign out. He and Officer Nail were present in the waiting area as she signed out of the hospital. Cloud noticed she had problems with her gait, smelled of alcohol, and was glassy-eyed. Nail and Dr. Cloud testified that Hurt snapped at Dr. Cloud, "There's no way that you can prove I'm drunk or I'm intoxicated." She was subsequently driven home by a relative.

### ISSUES

Hurt raises four issues for our review:

I. Whether the testimony of Dr. Cloud concerning his observation of Hurt after his examination was properly admitted.

II. Whether there was sufficient evidence to show that Hurt was intoxicated.

III. Whether the trial court improperly released a juror and replaced him with an alternate juror.

**2.** Hurt raised a fifth issue, whether the trial court erred in denying her motion for a mistrial. The errors she claims necessitated a mis-

4. Whether the trial court properly included the State's tendered Instruction No. 1.[2]

### I.

### *Physician–Patient Privilege*

■ Hurt first argues that Dr. Cloud's testimony was inadmissible because it was within the scope of the physician-patient privilege. In pertinent part, IND. CODE 34-1-14-5 provides:

Except as otherwise provided by statute, the following persons shall not be competent witnesses:

. . . .

Fourth. Physicians, as to matter communicated to them, as such, by patients, in the course of their professional business, or advice given in such cases.

These communications are confidential and privileged, and may not be disclosed by the physician without a waiver of that privilege by the patient. *Daymude v. State* (1989), Ind.App., 540 N.E.2d 1263, 1264.

■ The privilege is a legislative creation, however, and it is the legislature's prerogative to define its scope. For purposes of Title 9, Article 11 proceedings, the legislature has abolished the physician-patient privilege by enacting IND. CODE 9-11-4-6. In pertinent part, IND. CODE 9-11-4-6 is as follows:

(a) A physician or a person trained in obtaining bodily substance samples and acting under the direction of, or under a protocol prepared by, a physician, who:
(1) obtains a blood, urine, or other bodily substance sample from a person, regardless of whether the sample is taken for diagnostic purposes or at the request of a law enforcement officer under this section; or
(2) performs a chemical test on blood, urine, or other bodily substance obtained from a person;
shall deliver the sample or disclose the results of the test to a law enforcement officer who requests it as a part of a

trial are those we discuss in the first four issues. Accordingly, we need not discuss the issue of a mistrial separately.

criminal investigation. Samples and test results shall be provided to a law enforcement officer even if the person has not consented to or otherwise authorized their release.

(b) A physician, a hospital, or an agent of either is not civilly or criminally liable for:

(1) disclosing test results in accordance with this section;

(2) delivering a blood, urine, or other bodily substance sample in accordance with this section;

(3) obtaining a blood, urine, or other bodily substance sample in accordance with this section;

(4) disclosing to the prosecuting attorney or the deputy for use at or testifying at the criminal trial of the person as to facts observed or opinions formed;

(5) failing to treat a person from whom a blood, urine, or other bodily substance sample is obtained at the request of a law enforcement officer, if the person declines treatment; or

(6) injury to any person arising from the performance of duties in good faith under this section.

(c) For purposes of this article, the privileges arising from a patient-physician relationship do not apply to the samples, test results, or testimony described in this section, and these samples, test results, and testimony may be admitted in a proceeding in accordance with the applicable rules of evidence.

(d) The exceptions to the patient-physician relationship specified in subsection (c) do not affect those relationships in any proceedings not covered by this article.

(e) The test results and samples obtained by a law enforcement officer under subsection (a) may be disclosed only to a prosecuting attorney or a deputy prosecuting attorney for use as evidence in a criminal proceeding or proceedings under this article.

(f) Nothing in this section requires a physician or a person under the direction of a physician to perform a chemical test.

Hurt contends the statute abolishes the privilege only when bodily substance samples are taken and chemical tests performed on a defendant. Such a reading is contrary to the face of the statute and would vitiate the statute's purposes.

Subsection (b) immunizes physicians, hospitals, and their agents from criminal and civil liability in six instances. Five of these refer directly to the provisions for obtaining and testing bodily substance samples under "this section." The sixth, Clause 4, pertains to testimony, and makes no reference to bodily substance samples or their chemical testing. Second, subsection (c) provides that "the privileges arising from a patient-physician relationship do not apply to the ... testimony described in this section." Last, subsection (f) provides that no physician or person under a physician's direction is required to obtain a sample for chemical testing. All these provisions lead to but one conclusion: that obtaining and testing bodily substance samples are not prerequisites to the admission of testimony otherwise protected by the physician-patient privilege. Moreover, if we were to hold that obtaining samples for chemical testing is a prerequisite to the admissibility of testimony, we would fail to give effect to the statute's provisions regarding testimony, and ignore the legislature's purpose in abrogating the physician-patient privilege for Title 9, Article 11 proceedings. This we cannot do. *See Tinder v. Music Operating, Inc.* (1957), 237 Ind. 33, 142 N.E.2d 610; *Kinder v. Doe* (1989), Ind. App., 540 N.E.2d 111; *Weidler v. Floran* (1938), 105 Ind.App. 564, 13 N.E.2d 330. We hold, therefore, that when a suspect is taken for treatment and/or testing as described in IND. CODE 9–11–4–6, the physician-patient privilege is waived regardless of whether samples are obtained or tests performed.[3]

**3.** We are mindful of our supreme court's approving use of the following language from Blackstone's Commentaries: "There are three points to be considered in the construction of all remedial statutes; the old law, the mischief, and the remedy." *Middleton et. al. v. Greeson* (1885), 106 Ind. 18, 22, 5 N.E. 755, 757 (citing *State ex rel. v. Denny* (1879), 67 Ind. 148, 155).

■ Dr. Cloud's testimony was properly admissible for a second reason. The statements and observations he testified to were made after he had completed his examination of Hurt. It is well settled that the physician-patient privilege applies only to those communications necessary to treatment or to diagnosis looking toward treatment. *Corder v. State* (1984), Ind., 467 N.E.2d 409. Dr. Cloud's testimony covered a time period after his physician-patient relationship with Hurt had terminated, and Hurt's communications, both oral and those conveyed by her physical state, were not necessary to treatment or diagnosis looking toward treatment. The trial court properly admitted Dr. Cloud's testimony.

## II.

### *Sufficiency of the Evidence*

Hurt next challenges the sufficiency of the evidence to sustain her conviction, arguing that the absence of eyewitnesses to her driving, of field sobriety tests, and of chemical test results is fatal to the State's case.

■ The State need not prove blood alcohol content by chemical test results to maintain a conviction for operating a vehicle while intoxicated under IND. CODE 9-11-2-1. It is sufficient to show the defendant was impaired. *Diehlmann v. State* (1989), Ind.App., 539 N.E.2d 507, *trans. denied; Smith v. State* (1986), Ind. App., 502 N.E.2d 122. Here, Hurt was found alone in the car immediately after the accident and admitted to driving the car. The car came to rest 265 feet from the initial point of impact, and no skid marks were found. The car contained empty beer cans and liquor bottles, and both Mr. Golden and Deputy Keith testified that Hurt smelled strongly of alcohol. Deputy Keith additionally testified to Hurt's belligerent demeanor, her bloodshot eyes, and her staggering gait. This testimony was also corroborated by other witnesses. Conversely, Hurt testified she was not intoxicated.

Hurt's argument is simply a request that we reweigh the evidence. We decline the request.

■ In reviewing the sufficiency of the evidence to sustain a conviction, this court neither reweighs the evidence nor judges the credibility of the witnesses. We consider only the evidence favorable to the verdict together with all the reasonable inferences flowing therefrom and if there is substantial evidence of probative value to support the verdict, it will not be disturbed. *Traxler v. State* (1989), Ind.App., 538 N.E.2d 268, 269. Here, the State presented sufficient evidence for the jury to conclude that Hurt was impaired. There was no error.

## III.

### *Replacement of Juror*

■ Hurt denominates as fundamental error the trial court's release and replacement of a juror after trial had commenced. We fail to see any error. Ind. Trial Rule 47(B) allows the trial court to replace a disqualified juror with a properly selected alternate any time before the jury returns it verdict. We will review the trial court's decision whether to invoke T.R. 47(B) only for an abuse of discretion. *Ferry v. State* (1983), Ind., 453 N.E.2d 207.

■ There was no abuse of discretion here. The departed juror was the trial judge's brother-in-law, a friend of one of the testifying police officers, and the uncle by marriage of one of the other witnesses. Had the juror remained, there could easily have been the appearance of impropriety.[4] The trial court properly released and replaced the juror.

---

In the situation before us, the old law disallowed testimony protected by the physician-patient privilege. The mischief wrought was that valuable evidence about intoxicated drivers, who present a social problem of great proportions, was never brought before the trier of fact. To remedy the mischief, IND. CODE 9-11-4-6 must allow the admission of otherwise privileged evidence, regardless of the acquisition and testing of bodily substance samples.

**4.** Hurt's trial counsel concurred in the decision to release the juror. *Record* at 432. His failure to object waives the issue on appeal, *Stephens v. State* (1987), Ind., 506 N.E.2d 12, leading Hurt

## IV.

### *Jury Instructions*

Hurt's final argument attacks the State's tendered Instruction No. 1. Hurt refused to submit to any chemical testing for intoxication. IND. CODE 9–11–4–3(b) provides "[a]t any proceeding under this article, a person's refusal to submit to a chemical test is admissible into evidence." The instruction given read "[a] defendant's refusal to submit to a chemical test may be considered as evidence of the defendant's guilt." *Record* at 160.

■■ Hurt argues the word "guilt" was confusing to the jury. She correctly points out that confusing or misleading instructions should not be given. *Morgan v. State* (1989), Ind., 544 N.E.2d 143. She has failed to demonstrate, however, how the word guilt was confusing in this particular context.

■■ To determine whether an instruction is confusing or misleading, we examine the instructions as a whole to determine their meaning. *Hudson v. State* (1986), Ind., 496 N.E.2d 1286. Here, references to the issue of guilt, including the elements required for a verdict of guilty on the charged offense, exist throughout the instructions. *Record* at 151, 154, 156, 167, 160. The use of the word guilt, taken in the context of all the instructions, was not confusing, nor was the instruction otherwise impermissible.

■■ The State tendered the instruction based on language in *South Dakota v. Neville* (1983), 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748. In *Neville*, the United States Supreme Court stated, "[w]e do not think it fundamentally unfair for South Dakota to use the refusal to take the test as evidence of guilt...." *Id.* at 565, 103 S.Ct. at 923. Hurt rightly argues that merely because language is found in an appellate opinion, it is not necessarily proper language for a jury instruction. *Hare v. State* (1984), Ind., 467 N.E.2d 7. There is no blanket prohibition against the use of

appellate decision language, however, and the trial court here properly exercised the extent of its discretion in giving the instruction.[5]

■■ Even if it had been error to give the instruction, Hurt has failed to show prejudice. Errors in instructions do not mandate reversal if the conviction is clearly sustained by the evidence and the jury could not have found otherwise. *Burton v. State* (1988), Ind., 526 N.E.2d 1163, 1166. Here, as we have discussed, there was strong evidence of Hurt's guilt. The jury could not reasonably have acquitted her. The trial court did not err in giving the instruction.

Judgment affirmed.

RATLIFF, C.J., and ROBERTSON, J., concur.

■■■■■

to label the replacement of the juror as "fundamental" error in this court.

**5.** Our holding on this issue is a narrow one, based on the unique facts of the case before us.

We need not and do not decide on the general propriety of the instruction language used in this case.