Derrell W. HARTBARGER and Shirley
J. Hartbarger, Appellants
(Defendants Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 05A02–8902–PC–00042.

Court of Appeals of Indiana,
Second District.

June 4, 1990.

John R. Price, Indianapolis, for appellants.

Linley E. Pearson, Atty. Gen., Mary Dreyer, Deputy Atty. Gen., Indianapolis, for appellee.

SHIELDS, Presiding Judge.

Derrell W. and Shirley J. Hartbarger appeal the denial of their petition for post-conviction relief.

We reverse.

## ISSUE

The Hartbargers contend their guilty pleas were not knowing, voluntary, and intelligent. We reverse on this basis and do not reach their other argument, directed to the lack of a written plea agreement.

## FACTS

Derrell and Shirley Hartbarger were arrested on July 23, 1986, and subsequently were charged with six counts of neglect of a dependent, all class D felonies.[1] Count I charged the Hartbargers committed neglect by cruel confinement when they locked their sixteen (16) year-old son Stephen in a bedroom on or about July 22, 1986, and "for long periods of time previ-

---

1. IC 35–46–1–4(a)(2) (1988) (Count I); IC 35–46– 1–4(a)(4) (Counts II through VI).

ous thereto." Record at 15. The Hartbargers both pled guilty to Count I; the remaining charges against them were dismissed. At the guilty plea hearing the following factual basis was presented to support the pleas:

DEAN YOUNG [prosecutor]: ....
[A]pproximately two weeks before July 22nd in 1986, Derrell Hartbarger and Shirley Hartbarger caused Stephen Hartbarger, a minor dependent child of theirs, to be confined to a bedroom on the second story of their home located at 500 North in Blackford County, Indiana. Stephen Hartbarger was confined on a continuous basis over the two week period of time. During the night time hours, a hasp type latch device was placed on the outside of Stephen Hartbarger's room. The intention of the Hartbargers was to keep Stephen confined to his room during such night time hours. During the daylight hours of the two week period of time, no hasp type latch device was used on the outside of Stephen's room, however, Stephen was not permitted to associate with any of the other children in the room .. [.] excuse me, in the home, unless one of the parents were present.

COURT: Mrs. Hartbarger, are those allegations correct that the state indicated would be their proof?

SHIRLEY J. HARTBARGER: The only problem I have is where it says on a continuous basis. That is not to indicate that Stephen never had the lock ..[.] I think it clarifies that later on by saying he was not locked at all in the day time.

COURT: Except the hasp was there at the time?

SHIRLEY J. HARTBARGER: The hasp was there at night.

DERRELL W. HARTBARGER: But it was never latched.

SHIRLEY J. HARTBARGER: But it was never latched in the day time and

that is clear in that statement, is it not?

COURT: I believe that is so, that he was not permitted to associate with the other children during the day.

SHIRLEY J. HARTBARGER: Yes.

COURT: Do you agree that that is a correct statement?

SHIRLEY J. HARTBARGER: Yes.

COURT: Mr. Hartbarger, do you agree that that is a correct statement?

DERRELL W. HARTBARGER: Yes.

Record at 402–03.

The court accepted the pleas and entered judgments of conviction. On April 13, 1987 the Hartbargers moved for permission to withdraw their guilty pleas. The guilty plea court denied the motion. The Hartbargers filed another motion to withdraw their pleas on May 7, 1987. On September 25, 1987 the guilty plea court denied the motion and sentenced the Hartbargers to suspended one-year terms.

The Hartbargers petitioned for post-conviction relief, alleging the court should have permitted them to withdraw their guilty pleas because the plea agreement was not in writing and because their pleas were not knowing or voluntary. Their petition was denied, and they appeal.

## DECISION

A guilty plea is not voluntary, knowing, and intelligent unless it is supported by an adequate underlying factual basis. IC 35–35–1–3(b) (1988).[2] A factual basis may be established by the defendant's acknowledgment of the truth of a statement containing the facts constituting the crime charged. Bates v. State (1988), Ind., 517 N.E.2d 379, 381. In this case, the only information presented to the guilty plea court to support the Hartbargers' guilty pleas was the prosecutor's statement and their acknowledgment thereof, quoted above.

2. The court shall not enter judgment upon a plea of guilty or guilty but mentally ill at the time of the crime unless it is satisfied from its examination of the defendant or the evidence presented that there is a factual basis for the plea.
IC 35–35–1–3(b).

The dispositive issue here, narrowly stated, is whether, for a period of two weeks, confining a child to his bedroom at night, together with not permitting him to associate with his siblings when his parents are not present, can constitute cruel confinement. It cannot, as a matter of law.

The statute defining the offense to which the Hartbargers pled guilty reads, in relevant part:

A person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly or intentionally:

(1) places the dependent in a situation that may endanger his life or health;

(2) abandons or cruelly confines the dependent;

(3) deprives the dependent of necessary support; or

(4) deprives the dependent of education as required by law;

commits neglect of a dependent, a class D felony.

IC 35–46–1–4(a).

█ Confinement is not defined in article 46. However, IC 35–42–3–1 (1988) provides "[a]s used in this chapter [IC 35–42–3–1 to –3–3], 'confine' means to substantially interfere with the liberty of a person." Guided by this definition, we conclude the IC 35–46–1–2(a)(2) element of "confines" requires (1) substantial interference with liberty (2) which rises to the level of being cruel. Thus, facts beyond those demonstrating the interference to be substantial are required to prove it is also cruel.

"Cruelly" means "so as to cause pain or hurt." *Webster's Third New International Dictionary* 546 (1976). Certainly not all punishment is cruel, however, yet in some sense all punishment causes pain or hurt. *See State v. Tomassi* (1908), 75 N.J.L. 739, 746, 69 A. 214, 217. Subsection (1) of IC 35–46–1–4(a) covers punishment which endangers life or health. "Cruel confinement," therefore, is reasonably interpreted to require confinement which is likely to result in a harm such as disfigurement, mental distress, extreme pain or hurt, or gross degradation, and yet does not necessarily endanger the dependent's life or health.

Whether the confinement is "cruel" is to be determined by an objective standard, based upon the nature or extent of the punishment. Thus, confinement which is unreasonable under the facts and circumstances may be "cruel" regardless of the actor's motive.[3] We reach this conclusion mindful of the purpose of the neglect statute, which is the protection of children, and of the potentially conflicting right of parents to discipline their children.

The factual basis in this case provides no support for the conclusion the two-week confinement was cruel under the standards outlined above. The Hartbargers' guilty pleas were therefore not knowing, voluntary and intelligent, and accordingly, must be vacated.

The judgment of the post-conviction court is reversed, and the cause remanded with instructions to grant Hartbargers leave to withdraw their guilty plea.

SULLIVAN and HOFFMAN, JJ., concur.

---

**3.** This is not to say that the behavior for which a child is punished is irrelevant to the reasonableness of the punishment, but merely that the reasonableness of the punishment is to be determined in light of all surrounding facts and circumstances, including the type of punishment, the offending behavior, the age of the child, etc.