**Lottie E. DEMONTIGNEY and John David Wolfe, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 45A04–9110–CR–351.[1]**

Court of Appeals of Indiana, First District.

June 22, 1992.

Rehearing Denied Sept. 1, 1992.

Nathaniel Ruff, Appellate Public Defender's Office, Crown Point, for L. Demontigney.

1. This case was diverted by direction of the     Chief Judge on 4/23/92.

Scott L. King, Appellate Public Defender's Office, Crown Point, for J. Wolfe.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for the State.

BAKER, Judge.

This appeal presents a challenge to the constitutionality of the cruel confinement subsection of our neglect of a dependent statute, IND. CODE 35–46–1–4. The defendant-appellants John Wolfe and Lottie Demontigney, husband and wife, (collectively, the Wolfes) were convicted by a Lake County jury of a Class D felony for cruelly confining[2] their six-year old son, J.J.

In addition to challenging the constitutionality of the statute, Lottie argues the trial court improperly instructed the jury on the *mens rea* the State had to prove to win a conviction, and John argues the evidence is insufficient to sustain his conviction.

## FACTS

On May 12, 1991, the Wolfes' next door neighbors were having a barbecue. As they were cooking, J.J. called to the neighbors through the open window of his bedroom, and said he was hungry. The neighbors took J.J. a piece of cake and discovered he was chained to his bed. The neighbors immediately summoned the police.

Hammond Police Officer Wendy McBride arrived, saw J.J. in shackles through the window, and called her sergeant for assistance. After the sergeant saw J.J., he and Officer McBride went to the door and Lottie allowed them into the house and J.J.'s room.

J.J. was tethered to his bed by a homemade chain padlocked to one of his ankles. The room reeked of urine, J.J.'s clothes and bed linens were soaked and stained with urine, and the boy had defecated in his pants. The chain confining J.J. was very short, and he could not move far enough from his bed even to reach his toys.

J.J. testified his parents had been chaining him to his bed since before Valentine's Day 1991, and that he routinely urinated and defecated in his trousers because he could not get to a toilet. The Wolfes acknowledge they periodically chained the boy over a span of several months. The evidence also revealed a neighbor saw J.J. dangling by the chain from his window sometime before May 12.

## DISCUSSION AND DECISION

### I

#### *Constitutionality of IND. CODE 35–46–1–4(a)(2)*

The Wolfes were charged under IND. CODE 35–46–1–4(a)(2), which provides:

A person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly or intentionally:

\*     \*     \*     \*     \*     \*

(2) abandons or cruelly confines the dependent;

\*     \*     \*     \*     \*     \*

commits neglect of a dependent, a Class D felony.

The Wolfes first contend the statute is unconstitutionally vague. In reviewing a challenge to the constitutionality of subsection 1 of IND. CODE 35–46–1–4(a), our supreme court stated:

A statute will not be found unconstitutionally vague if individuals of ordinary intelligence would comprehend it to adequately inform them of the conduct to be proscribed. The statute need only inform the individual of the generally proscribed conduct, a statute need not list with itemized exactitude each item of conduct prohibited.

*State v. Downey* (1985), Ind., 476 N.E.2d 121, 122 (citations omitted). Moreover, "[i]t is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at

2. IND. CODE 35–46–1–4(a)(2).

hand." *United States v. Mazurie* (1975), 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706, 713.

The Wolfes' argument centers around the word "cruelly." They do not challenge the fact that J.J. was their dependent or that confinement means a substantial interference with liberty. *See Hartbarger v. State* (1990), Ind.App., 555 N.E.2d 485, 487, *trans. denied.* Instead, they assert ordinary people cannot determine, within a given situation, whether a confinement of a dependent is cruel or not. In light of the facts of the present case, the Wolfes' claim boils down to a contention that people of ordinary intelligence could not know the statute proscribes chaining a young child to a bed and leaving him for long periods of time to defecate and urinate on himself without any food, water, or means of diversion. Succinctly, their assertion is absurd.

In *Hartbarger, supra,* this court held that "cruelly" as used in IND. CODE 35–46–1–4(a)(2) means "confinement which is likely to result in a harm such as disfigurement, mental distress, extreme pain or hurt, or gross degradation, and yet does not necessarily endanger the dependent's life or health." *Id.* The mental distress and gross degradation a child will necessarily suffer from conduct like the Wolfes' are so obvious that people of any intelligence, to say nothing of ordinary intelligence, could not but know the illegality of such conduct under the statute. The Wolfes have failed in their burden. *See State v. Downey, supra.* The statute is constitutional.

## II

### Mens Rea

■ Both the Wolfes argue they kept J.J. chained as a disciplinary measure. Lottie carries this argument forward to claim the State was required to prove she was knowingly or intentionally cruel when she confined J.J., i.e., that she was subjectively cruel, and that the trial court therefore erred in instructing the jury that "cruel" was to be determined objectively. This argument is without merit. In *Hartbarger, supra,* we specifically held the cruel

nature of a confinement "is to be determined by an objective standard." *Id.* at 487. There was no error.

## III

### Sufficiency of the Evidence

John and Lottie had a fight sometime on May 10, 1991, and, as a result, John was arrested and jailed that same day. Thus, he had been out of the home for a day and a half to two days before the neighbors discovered J.J. Therefore, his argument goes, there was insufficient evidence to convict him of having participated in the cruel confinement of J.J. on May 12, 1991.

■ When reviewing challenges to the sufficiency of the evidence to sustain a conviction, we neither reweigh the evidence nor judge witness credibility. *Hurt v. State* (1990), Ind.App., 553 N.E.2d 1243. We look only to the evidence most favorable to the verdict and all reasonable inferences flowing therefrom, and if the verdict is supported by substantial evidence of probative value, we will not disturb it. *Id.* Here, John ignores that the information charged him with having cruelly confined J.J. between January 1, 1991 and May 12, 1991, and that there was evidence of confinement on several occasions prior to May 12. The State was not required to prove John cruelly confined J.J. only on May 12, and the evidence is therefore overwhelmingly sufficient to sustain his conviction.

## CONCLUSION

The judgment of the trial court is in all things affirmed.

ROBERTSON, J., concurs.

SULLIVAN J., concurs in result as to Demontigney, but dissents as to Wolfe. He would reverse the latter conviction.