Jeffrey JELLISON, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 29A02–9504–CR–187.

Court of Appeals of Indiana.

Oct. 20, 1995.

**533**

John F. Kautzman, Ruckelshaus, Roland, Hasbrook & O'Connor, Indianapolis, for appellant.

Pamela Carter, Attorney General, Preston W. Black, Deputy Attorney General, Indianapolis, for appellee.

**OPINION**

KIRSCH, Judge.

Jeffrey D. Jellison appeals his conviction for operating a vehicle while intoxicated,[1] a Class A misdemeanor (OWI). Jellison raises several issues on appeal which we consolidate and restate as follows:

I. Whether there was probable cause to arrest Jellison?

II. Whether Jellison's conviction is supported by sufficient evidence?

We affirm.

1. *See* IC 9–30–5–2 (1993 Ed.).

**FACTS**

The facts most favorable to the judgment of conviction show that on August 26, 1993, Jellison, a Carmel police officer, met four other officers in the early afternoon at an establishment named Hooters. There, the five officers shared food and two pitchers of beer. The officers then went to P.T.'s, a dancing establishment, where Jellison continued to consume alcohol.

Later that evening, at approximately 9:45 p.m., Jellison drove his squad car to meet Officer Tracy Taylor at her apartment. Jellison and Officer Taylor then took her personal vehicle and went to a restaurant named Saligoe's. At Saligoe's, Jellison consumed three beers without eating. At approximately 1:00 a.m., on August 27, 1993, Jellison and Officer Taylor left Saligoe's and proceeded to the Old Town Tavern. There, Jellison consumed one beer and almost two mixed drinks before Old Town closed at 2:30 a.m.

After leaving Old Town, Jellison and Officer Taylor returned to her apartment. Jellison left twenty to thirty minutes later in his squad car. Shortly thereafter, Jellison, who was traveling north on Hazel Dell Road, collided with a vehicle driven by Patricia Niehaus, who was traveling east on 146th Street.

After the collision, Jellison and Niehaus exited their respective vehicles. Jellison approached Niehaus, shined a flashlight in her eyes, and asked, "Where in the hell did you come from?" *Record* at 350. Upon hearing Niehaus's response, "Carmel," Jellison then asked, "What in the hell were you doing?" *Record* at 350. Niehaus responded by stating that she was on her way to work. Jellison then said, "Give me your driver's license." *Record* at 350. After examining Niehaus's license, Jellison said to her, "Go wait in your car." *Record* at 352. Jellison made no attempt to ascertain if Niehaus suffered injury and did not assist her in any way.

At approximately 3:50 a.m., Jellison, an eleven-year veteran of the Carmel police department, radioed the police dispatcher that

**534**

he had been involved in an accident at the intersection of 146th Street and Gray Road, rather than the correct location at Hazel Dell Road. Due to Jellison's error, the responding officers and emergency personnel were delayed in finding the accident scene.

At approximately 4:30 a.m., Jellison was taken to the emergency room at Riverview Hospital where he was examined by the nurse on duty, Kelly Hawkins, and Dr. Steven Land. Nurse Hawkins and Dr. Land both noted that his breath smelled of alcohol. After Jellison's examination, Dr. Land recommended several diagnostic tests, including a blood test. At 7:45 a.m., Officer John Towle, who investigated and reconstructed the accident, spoke with Jellison. During the conversation, Jellison asked Officer Towle to check his medical records for his blood alcohol content (BAC). Officer Towle complied and informed Jellison that his blood alcohol content was .105% (whole blood).[2] Officer Towle also noted that Jellison's eyes were watery and bloodshot and that Jellison's breath smelled of alcohol.

As the morning progressed, Officer Luckie Carey was assigned to the criminal investigation surrounding Jellison's accident. Officer Carey interviewed the officers who drank with Jellison and the officers who reconstructed the accident scene; he also met with Jellison and reviewed the BAC results. Officer Carey then arrested Jellison in the afternoon of August 27, 1993.

## DISCUSSION AND DECISION

### I. Probable Cause

■ Jellison first contends that the Carmel police did not have probable cause to arrest him. Probable cause for an arrest exists when the facts and circumstances known to the officer would warrant a reasonably prudent person to believe that the arrestee has committed the criminal act in question. *Roberts v. State* (1992), Ind., 599 N.E.2d 595, 598. The level of proof necessary to establish probable cause is less than that necessary to establish guilt beyond a

reasonable doubt. *Id.* Probable cause, in fact, requires only a fair probability of criminal activity, not a prima facie showing. *Johnson v. State* (1993), Ind.App., 617 N.E.2d 559, 567. Finally, probable cause may be established by evidence that would not be admissible at trial. *State v. Johnson* (1987), Ind.App., 503 N.E.2d 431, 433, *trans. denied.*

■ OWI is defined in IC 9-30-5-2, which states, "A person who operates a vehicle while intoxicated commits a Class A misdemeanor." Here, the police knew that Jellison had consumed several alcoholic beverages prior to the accident. Their investigation found that Jellison's failure to yield the right of way caused his vehicle to strike the side of Niehaus's vehicle at the intersection of 146th Street and Hazel Dell Road. The police saw Jellison after the accident and knew that he smelled of alcohol and had watery and bloodshot eyes. Finally, the police knew that Jellison failed the blood test with a .105% BAC. These facts, taken together, sufficiently give rise to the fair probability that Jellison operated a vehicle while he was intoxicated, and we hold that the Carmel police department had sufficient facts and circumstances before it to establish probable cause to arrest Jellison.

### II. Sufficiency of Evidence

■ Jellison further contends that the evidence was insufficient to support his conviction for OWI. When reviewing challenges to the sufficiency of the evidence supporting a criminal conviction, we neither reweigh the evidence nor judge witness credibility. *Landress v. State* (1992), Ind., 600 N.E.2d 938, 940. We consider only the evidence most favorable to the verdict, together with all reasonable inferences arising therefrom. *Babin v. State* (1993), Ind.App., 609 N.E.2d 3, 4, *trans. denied.* If there is substantial evidence of probative value supporting the conviction, we must affirm. *Geans v. State* (1993), Ind.App., 623 N.E.2d 435, 437.

2. Jellison's BAC results were not admitted into evidence at trial. Consequently, we consider the BAC results only with respect to our discussion

of probable cause and do not consider them with respect to our discussion on sufficiency of the evidence.

 In order to establish an OWI violation, the State must prove: (1) Jellison operated a vehicle; (2) while intoxicated. Jellison asserts that because no one directly observed him driving his squad car, the State failed to show he operated the vehicle. We disagree. To operate a vehicle is to "drive it or be in actual control of it upon a highway." *Mordacq v. State* (1992), Ind.App., 585 N.E.2d 22, 23. Circumstantial evidence is sufficient to prove that the defendant operated the vehicle while intoxicated. *See Taylor v. State* (1990), Ind.App., 560 N.E.2d 100, 102, *trans. denied; Trobaugh v. Hellman* (1990), Ind.App., 564 N.E.2d 285, 287; *Garland v. State* (1983), Ind.App., 452 N.E.2d 1021, 1022–23; *Rose v. State* (1976), 168 Ind. App. 674, 679–80, 345 N.E.2d 257, 260–61. In the present case, the State presented sufficient circumstantial evidence that Jellison was operating his squad car when it struck Niehaus's vehicle. The evidence before the trier of fact reveals that: (1) Jellison went to Officer Taylor's apartment prior to going out to drink; (2) Officer Taylor saw Jellison's squad car parked next to hers in the parking lot of her apartment; (3) shortly after leaving Officer Taylor's apartment, Jellison was at the scene of an accident at 146th Street and Hazel Dell Road; (4) no one other than Niehaus and Jellison were present; (5) it was Jellison's squad car which struck Niehaus's vehicle; and (6) Jellison notified the police dispatcher that he was in an accident at 146th Street and Gray Road. Drawing reasonable inferences from this evidence, we find that it forms a sufficient basis from which the trier of fact could determine that Jellison was operating his vehicle.

 Jellison finally contends the evidence was insufficient to establish that he was intoxicated because the BAC results were excluded from evidence and he showed no other physical signs of intoxication. "Intoxication" is defined in IC 9–13–2–86, which provides:

" 'Intoxicated' means under the influence of:

(1) alcohol;

(2) a controlled substance (as defined in IC 35–48–1); or

(3) a drug other than alcohol or a controlled substance; or

(4) a combination of alcohol, controlled substances, or drugs;

so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties to an extent that endangers a person."

Proof of a defendant's intoxication may be established by showing impairment and does not require proof of a BAC of .10% or above. *Henriott v. State* (1990), Ind.App., 562 N.E.2d 1325, 1327; *Hurt v. State* (1990), Ind.App., 553 N.E.2d 1243, 1248.

 The State presented evidence sufficient to establish Jellison's impairment when he struck Niehaus's vehicle. The evidence revealed that Jellison had approximately four beers in the early afternoon of August 26, 1993. Later that same evening, and into the early morning of August 27, 1993, Jellison continued to consume alcohol and had approximately four more beers and two mixed drinks before returning to Officer Taylor's apartment. At Officer Taylor's apartment, Jellison retrieved his squad car. Shortly thereafter, Jellison's vehicle struck the side of Niehaus's vehicle in the intersection of 146th Street and Hazel Dell Road. Officer John McAllister, who responded to the accident, testified that northbound Hazel Dell Road had a stop sign at the intersection with 146th Street. Officer Towle reconstructed the accident and testified that Jellison, who was northbound on Hazel Dell Road, was in the intersection when he struck Niehaus's vehicle in the side.

A trier of fact drawing reasonable inferences from this evidence could find that Jellison's consumption of alcohol impaired his ability to control his vehicle and caused the accident with Niehaus. At the intersection of 146th Street and Hazel Dell Road, a stop sign on Hazel Dell Road required Jellison to yield the right of way to traffic traveling on 146th Street. Since Jellison's squad car was several feet into the intersection when it struck the side of Niehaus's vehicle, the trier of fact could infer that Jellison's attention and reflexes were impaired by alcohol, causing him to either disregard the stop sign or to fail to exercise a proper lookout.

Jellison's actions at the accident scene also support the inference that he was intoxicated. After the accident, Jellison radioed the police dispatcher and gave her the location of a street approximately one mile away from his actual location. In addition, Jellison displayed an aggressive attitude toward Niehaus. Jellison's failure to correctly determine his whereabouts at the accident scene and his failure to assist Niehaus in any way support a reasonable inference by the trier of fact that Jellison was impaired.

The evidence also revealed that Jellison showed physical signs of intoxication. The medical personnel who examined Jellison, Nurse Hawkins and Dr. Land, both stated that his breath smelled of alcohol. Officer Towle also noted Jellison's eyes were watery and bloodshot in addition to the smell of alcohol on Jellison's breath. This physical evidence, in conjunction with the accident scene and Jellison's behavior at the scene, supports the reasonable inference that Jellison operated his vehicle while intoxicated. *See Hurt v. State* (1990), Ind.App., 553 N.E.2d 1243, 1248 (evidence presented that defendant's car came to rest 265 feet from the initial point of impact without skid marks, contained empty cans of beer and liquor bottles, and that defendant smelled of alcohol, was belligerent, unsteady on his feet, and had bloodshot eyes was sufficient to show intoxication).

Jellison, in challenging his conviction, asks us to go beyond our standard of review to reconsider and reweigh all of the evidence. We decline to do so. Drawing reasonable inferences from the evidence most favorable to the State, we find that the trier of fact had substantial evidence of probative value sufficient to support Jellison's conviction for OWI.

Affirmed.

FRIEDLANDER and ROBERTSON, JJ., concur.