**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 23 2012, 8:47 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DORI NEWMAN**
Newman & Newman, PC
Noblesville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**NICOLE M. SCHUSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOSEPH APONGULE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 29A04-1109-CR-543 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable Gail Z. Bardach, Judge
Cause No. 29D06-1101-CM-1483

**February 23, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Joseph Apongule appeals his conviction for operating a vehicle while intoxicated as a class C misdemeanor.[1] Apongule raises one issue which we revise and restate as whether the evidence is sufficient to support his conviction. We affirm.

The facts most favorable to the conviction follow. In the early morning of October 10, 2010, Rene Williams, the store manager of the Village Pantry located at 96th and College in Hamilton County, was sitting on the curb outside of the store with her fiancé. Williams's attention was first drawn to Apongule by the way that he drove into the parking lot. Apongule "came onto the parking lot and went to the pump furthest from the store" and "kind of parked there about five or six feet from the pump and sat there." Transcript at 8. Apongule then "drove around all the pumps," "went back to that pump and sat there a little bit," "probably about the same distance from that pump, then drove around," parked, and went into the store. Id.

Williams followed Apongule into the store. Apongule went to the back area of the store and then went to the cash register. Apongule "wanted to get fuel and to purchase the items that he got" and "whatever it was he was saying to [Williams] wasn't pleasant." Id. at 9. Williams called her fiancé over. Apongule purchased fuel with his credit card, Williams "rang out the transaction," and Apongule went to pump his gas. Id. Williams became disturbed when she saw that Apongule was "not walking straight." Id. Apongule "could not put fuel in his car" and was fumbling with the "actual nozzle of the pump." Id. Apongule then started going around the car looking for something. He then entered the store again and accused Williams of taking his credit card, and his speech "seemed

[1] Ind. Code § 9-30-5-2 (2004).

slurred." Id. at 10. Williams thought that Apongule was drunk and called the police. Williams constantly observed Apongule except for a period of about five to seven minutes and never observed Apongule drink alcohol.

Less than an hour after Apongule drove into the Village Pantry, City of Carmel Police Officer Richard Thomas arrived at the scene and observed Apongule walking from the store toward a vehicle parked at a pump. Officer Thomas asked Apongule "what was going on," and Apongule said that "he couldn't find his wallet and his credit card and he needed [Officer Thomas's] help." Id. at 18. Officer Thomas asked Apongule for his identification, but Apongule ignored Officer Thomas and again asked for Officer Thomas's help. During the conversation, Officer Thomas smelled the odor of an alcoholic beverage on Apongule's breath and noticed that Apongule's eyes were bloodshot and glassy.

Officer Thomas administered standardized field sobriety tests on Apongule. Specifically, Officer Thomas administered a horizontal gaze nystagmus test and told Apongule to follow the pen with his eyes and his eyes only but Apongule continued to either move his head or just stare directly at Officer Thomas when the pen was not in front of Apongule's face. Officer Thomas "rated [Apongule] as a failure due to refusal to follow instructions." Id. at 21. Officer Thomas then administered the "nine step walk and turn" test, and Apongule failed that test. Id. Officer Thomas then offered Apongule a portable breath test, and Apongule refused. Officer Thomas asked Apongule for his identification again, and Apongule refused to "tell . . . who he was or give . . . any kind of

3

identification." Id. at 24. Other officers arrived and ordered Apongule to keep his hands out of his pockets, and Apongule "became noncompliant" and "very agitated." Id.

Officer Gothier placed Apongule in handcuffs and transported him to St. Vincent's Hospital where Apongule was "very abusive and vulgar and belligerent toward the hospital staff," Officer Gothier, and Officer Thomas. Id. at 25. Officer Thomas obtained a warrant for a blood draw and read the warrant to Apongule. Apongule still refused, and Officer Thomas and Officer Gothier "had to help physically hold him down as the nurses drew the blood." Id. at 26. Apongule requested medical treatment, but when a doctor arrived Apongule refused any treatment.

On January 31, 2011, the State charged Apongule with operating a vehicle while intoxicated as a class C misdemeanor.[2] During the bench trial, Williams and Officer Thomas testified to the foregoing facts. Apongule testified that he did not purchase gas and that he was waiting for his wife to arrive from Greenwood. Apongule stated that he became intoxicated after driving the vehicle and testified as follows:

> [W]hen I came to park my vehicle, I sat there and sat there. I made a dumb mistake. I'm sorry for my language, and one mistake I made was while I was sitting, you know, in my vehicle behind the seat, you know, I'm very sure that when police arrived they saw my car. My windows was open because that's where I was resting, waiting for my wife. The stupid mistake that I made was, you know, I had a vodka. I think it was about a pint of vodka. So I drank it; that was the dumbest mistake.

Id. at 34.

After the closing argument of Apongule's attorney, the court stated:

---

[2] The State also charged Apongule with operating a vehicle with an "alcohol concentration equivalent to at least fifteen-hundredths (0.15) gram of alcohol per 100 milliliters of [] blood" as a class A misdemeanor, but the charge was dismissed at trial after the State indicated that the toxicologist was not available. Appellant's Appendix at 6.

4

> Well, there's no question in my mind that [Apongule] was intoxicated when law enforcement arrived. I don't think there's any question in his mind that he was intoxicated when law enforcement arrived. As to whether or not there's any evidence as to whether he was intoxicated before that, when he operated the vehicle, I disagree with you completely. The testimony of Mrs. Williams was that she saw him drive into the gas station parking lot. She observed the way he drove into the gas station parking lot. He drove up to a pump, sat for a few minutes five to six feet from the pump, drove around all the pumps, drove back to the first pump, sat there for a few minutes again. She was sitting on the curb with her fiancée [sic], getting concerned. He went inside. He went to the register. They had this unpleasant encounter while he was paying for his water and paying for his gas. He went back outside, went to the car at the pump, couldn't get the fuel in. He wasn't walking straight when he did that, according to her. She had observed, as they had their unpleasant encounter inside the gas station that his speech was slurred. In her opinion he was drunk. That's why she called the police. He came back in, accused her of taking his credit card and keeping his credit card. There's no question in my mind that at the time she observed all of this, Mr. Apongule had already had whatever it was he had that caused him to be intoxicated and that he was intoxicated at the time he operated the vehicle. I'm going to find that he is guilty.

Id. at 54-55. The court sentenced Apongule to sixty days in the Hamilton County Jail.

The issue is whether the evidence is sufficient to sustain Apongule's conviction for operating a vehicle while intoxicated as a class C misdemeanor. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess witness credibility or reweigh the evidence. Id. We consider conflicting evidence most favorably to the trial court's ruling. Id. We affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." Id. (quoting Jenkins v. State, 726 N.E.2d 268, 270 (Ind. 2000)). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. Id. at 147. The evidence is sufficient if an inference may

reasonably be drawn from it to support the verdict. Id. A conviction may be based upon circumstantial evidence alone. Fought v. State, 898 N.E.2d 447, 450 (Ind. Ct. App. 2008). Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material element of the offense. Id.

The offense of operating a vehicle while intoxicated is governed by Ind. Code § 9-30-5-2, which provides that "a person who operates a vehicle while intoxicated commits a Class C misdemeanor." "Intoxicated" means under the influence of alcohol, a controlled substance or a combination of them "so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties." Ind. Code § 9-13-2-86 (Supp. 2006). "Intoxication may . . . be established through evidence of consumption of significant amounts of alcohol, impaired attention and reflexes, watery or bloodshot eyes, an odor of alcohol on the breath, unsteady balance, failed field sobriety tests and slurred speech." Dunkley v. State, 787 N.E.2d 962, 965 (Ind. Ct. App. 2003) (quoting Mann v. State, 754 N.E.2d 544, 547 (Ind. Ct. App. 2001), trans. denied). Proof of intoxication may be established by showing impairment and it does not require proof of a Blood Alcohol Content level. Ballinger v. State, 717 N.E.2d 939, 943 (Ind. Ct. App. 1999); Jellison v. State, 656 N.E.2d 532, 535 (Ind. Ct. App. 1995).

Apongule concedes that he drove a vehicle to the Village Pantry and that he was intoxicated when Officer Thomas arrived on the scene, but argues that "[t]here is no evidence of [his] condition while he was driving, or immediately thereafter." Appellant's Brief at 8. In other words, Apongule "maintains that the evidence presented at his trial is not sufficient to establish that he operated a vehicle while intoxicated or that [he] was

6

intoxicated when he drove to the Village Pantry." Id. at 10. Apongule's arguments are merely a request that we reweigh the evidence and judge the credibility of the witnesses, which we cannot do. See Drane, 867 N.E.2d at 146.

The record reveals that Apongule drove into the parking lot, went to the first pump, and parked five or six feet from the pump, drove around all the pumps, went back to the first pump, then drove around, and parked. He then went into the store twice and "was not walking straight," "could not put fuel in his car," was fumbling with the nozzle of the pump, and had slurred speech. Transcript at 9. Williams had previously dealt with people that she believed to be intoxicated and believed that Apongule was intoxicated. Williams testified that she constantly observed Apongule except for a period of about five to seven minutes and that she never observed Apongule drink alcohol. Less than an hour after Apongule drove into the Village Pantry, Officer Thomas arrived at the scene and believed that Apongule was intoxicated based upon "the manner in which his eyes were bloodshot and glassed over, the odor of alcohol and his unsteady balance, and refusal to complete the tests and his abusive attitude." Id. at 27.

Based upon the record, we cannot say, when taken as a whole, that the inferences made by the trial court as the trier of fact were unreasonable. We conclude that evidence of probative value exists from which the court could have found Apongule guilty beyond a reasonable doubt of operating a vehicle while intoxicated as a class C misdemeanor. See Clark v. State, 512 N.E.2d 223, 227-228 (Ind. Ct. App. 1987) (holding that the evidence was sufficient from which the trier of fact could conclude beyond a reasonable doubt that the defendant was intoxicated at the time he operated a vehicle).

For the foregoing reasons, we affirm Apongule's conviction for operating a vehicle while intoxicated as a class C misdemeanor.

Affirmed.

MAY, J., and CRONE, J., concur.