

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CR–14–933

| | | |
|---|---|---|
| AARON JAMES SZABO | | **Opinion Delivered** September 23, 2015 |
| | APPELLANT | |
| V. | | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. CR–2014–462–1] |
| STATE OF ARKANSAS | | HONORABLE WILLIAM A. STOREY, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

## CLIFF HOOFMAN, Judge

Aaron James Szabo appeals after he entered a conditional plea on the charge of Driving While Intoxicated—First Offense and was sentenced by the Washington County Circuit Court ("trial court") to a fine of $325, court costs of $300, and booking/administrative fee of $20.[1] On appeal, appellant contends that (1) the police officer illegally seized appellant by

---

[1] While the trial court orally pronounced that it sentenced appellant to one day in county jail with one day jail credit, the written sentencing order does not reflect that the trial court sentenced him to any time in county jail. Our supreme court has held that when there is a discrepancy between the written sentencing order and the oral pronouncement of sentence, it is the written sentencing order that controls. *See Vance v. State*, 2011 Ark. 243, 383 S.W.3d 325. Additionally, we note that appellant's sentence is, therefore, illegal on its face. Arkansas Code Annotated section 5-65-111(a)(1) requires a minimum of twenty-four hours' imprisonment unless the trial court includes reasons for an order of public service in lieu of jail in the court's written order or judgment. Although appellant's sentence is illegal, the statute authorizing the correction of illegal sentences at any time does not permit us to increase his sentence to comply with the statutory minimum absent an appeal or cross-appeal from the State. *Blackwell v. State*, 2015 Ark. App. 96, 455 S.W.3d 848; *King v. State*, 2012 Ark. App. 94; *Cook v. State*, 46 Ark. App. 169, 878 S.W.2d 765. As no such appeal was tendered here, we cannot address the legality of appellant's sentence. *Id.*

SLIP OPINION

opening the driver's door and positioning himself between the open door and the seat occupied by appellant; (2) the police officer had no objective reason to believe that appellant was in immediate need of medical assistance and imminent danger of death or serious bodily harm, and thus, no exigent circumstances existed authorizing the officer's opening of the car door and entry into appellant's vehicle; (3) the police officer illegally searched appellant's vehicle by opening the driver's door and leaning into appellant's vehicle; and (4) the police officer illegally seized appellant by opening the driver's door, entering appellant's vehicle, turning off appellant's vehicle, and removing and taking possession of the keys to the vehicle. We affirm.

Appellant appealed his case for driving while intoxicated from the Fayetteville District Court to the Washington County Circuit Court on March 6, 2014. On April 25, 2014, appellant filed a motion to suppress illegally obtained evidence, and a hearing was held on June 16, 2014. At the hearing, Corporal Greg Dawson testified that he was patrolling on March 2, 2013, at approximately 4:30 in the morning when he noticed appellant's vehicle parked in a parking lot on Block Street with its lights on. After parking his vehicle a few spots from appellant, he walked up to appellant's car and noticed that the vehicle was "running," and appellant was in the driver's seat "laid back, somewhat leaning over the center." After knocking on the window several times without any response or movement, Corporal Dawson opened the unlocked door and leaned into the vehicle. On direct examination, he testified that he "leaned in, shook the driver, asked him if he was awake, didn't get a response. That's when I noticed an odor of intoxicants from inside that vehicle, figuring that he was

2

SLIP OPINION

intoxicated that's why I turned the vehicle off." Corporal Dawson knew appellant was breathing, but he did not know if he was just asleep or unconscious. While he did not eliminate his medical concerns, once he smelled the alcohol, he thought that appellant was probably "drunk" and "passed out." After not receiving any response from appellant, despite several attempts to wake him, Corporal Dawson testified that he "did the sternum rub on him."

On cross-examination, appellant's counsel questioned Corporal Dawson regarding his written report that did not mention an "odor of intoxicants" until the third paragraph, in which he described appellant's behavior after exiting the vehicle. Corporal Dawson explained that he did not remember whether he shook appellant before or after he turned the vehicle off and placed the keys on top of the vehicle. However, he testified that he remembered that he noticed the smell of alcohol before he turned the vehicle off because he was concerned that, if appellant woke up with the engine running, appellant would immediately try to drive with him in the doorway. After observing the video from his vehicle's dashboard camera that was played during the hearing, he admitted that he had turned the vehicle off before he verbally tried to wake appellant but did not remember when he started to shake appellant. However, he admitted that "[m]ore than likely" he had turned the vehicle off before he attempted to wake appellant either verbally or by physically shaking him. Additionally, at some point after Corporal Dawson opened the door, he heard appellant snoring. After appellant finally woke up, he was subsequently arrested for driving while intoxicated by Officer Ryan Schleiff, who testified that he responded to the scene after appellant was already

SLIP OPINION

outside of the vehicle and had performed the field-sobriety tests.

After appellant's counsel orally argued that the search and seizure violated appellant's Fourth Amendment right, the trial court made the following ruling:

> I suppose the real issue here is whether or not opening the door is, one, a seizure and the officer going into the interior of the vehicle, of the Defendant's vehicle is a search. That's, at least as I understand it, the issue. I think it is of some significance here that one, this occurred in the early morning hours of March 2nd, and that seems to be always a problem in these cases that we don't -- they don't get to this Court for over a year and memories do tend to fade.
>
> But nonetheless, I think that the testimony of Corporal Dawson is important to the extent that he did consider when he approached the vehicle -- again the facts are not in dispute at all, about 4:00 a.m. on March 2nd, last year. At that particular time of day with the motor of the vehicle running, with the Defendant, Mr. Szabo apparently unconscious or sound asleep, described it a variety of ways, unresponsive when the officer bangs on the window or taps on the window or beats on the window. Given the fact, at least in my view, that he at least, he, being the police officer, Corporal Dawson considered the fact that it may be a medical problem, although clearly he didn't know and as it turned out it was not, so I don't see any particular need to include that in the report.
>
> But I think it was clearly appropriate to continue the investigation by opening the door, and to some extent it can be argued and I think with some force, that the situation as presented and as described may well have constituted exigent circumstances. So once he opens the door, he, being Officer Dawson, smells the odor of alcohol and then clearly has a right under 3.1 to continue his investigation by seizing the Defendant and so in my judgment -- and it's an interesting case. And perhaps there are obviously not a number of cases in any jurisdiction that are identical, but nonetheless, I feel as though the seizure did not occur until the keys were removed from the ignition, the car was turned out -- again, turned off after the odor of alcohol was apparent. So in my judgment the State has met its burden and the motion is denied.

After appellant timely filed his appeal, this court ordered appellant to file a supplemental addendum to provide an exhibit of the video recording of the officer's dashboard camera to the members of our court. *Szabo v. State*, 2015 Ark. App. 354. Appellant properly filed a supplemental addendum, and this appeal followed.

Appellant contends on appeal that (1) the police officer illegally seized appellant by opening the driver's door and positioning himself between the open door and the seat occupied by appellant; (2) the police officer had no objective reason to believe that appellant was in immediate need of medical assistance and imminent danger of death or serious bodily harm, and thus, no exigent circumstances existed authorizing the officer's opening of the car door and entry into appellant's vehicle; (3) the police officer illegally searched appellant's vehicle by opening the driver's door and leaning into appellant's vehicle; and (4) the police officer illegally seized appellant by opening the driver's door, entering appellant's vehicle, turning off appellant's vehicle, and removing and taking possession of the keys to the vehicle. The State disagrees, however, and contends that the trial court did not err in denying appellant's motion to suppress because Corporal Dawson "rightly exercised his function as a community caretaker and opened the door to check on appellant." We agree.

On review of a trial court's denial of a motion to suppress evidence, this court reviews the trial court's factual determinations for clear error, while reviewing its legal conclusions de novo. *James v. State*, 2012 Ark. App. 118, 390 S.W.3d 95. Consistent with this standard, this court defers to the superior position of the trial court to determine the credibility of witnesses and to resolve evidentiary conflicts, but resolves legal questions through an independent determination based on the totality of the circumstances. *Id.*

This court has previously recognized the existence of an officer's "community caretaking function." *Blakemore v. State*, 25 Ark. App. 335, 758 S.W.2d 425 (1988). In *Cady v. Dombrowski*, the United States Supreme Court held that a search of the trunk of a disabled

vehicle without a warrant did not violate the Fourth and Fourteenth Amendments, explaining that local police officers frequently "engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." 413 U.S. 433, 441 (1973). In *Blakemore*, a deputy approached a vehicle with its motor running and lights on. *Blakemore, supra.* He observed that appellant was "either asleep or passed out" in the front seat. *Blackemore*, 25 Ark. App. at 336–37, 758 S.W.2d at 426. After the deputy repeatedly knocked on the window, appellant woke up, and the deputy smelled alcohol and observed appellant stumble when he got out of his vehicle. *Id.* This court held that "[a]lthough he did not see any blood or physical injuries, Deputy Rushing did not know if the appellant was ill, drunk, or merely asleep. Given these circumstances we believe that Deputy Rushing, as part of his community caretaking function, was justified in knocking on the appellant's window to question him and make an inquiry." *Id.* at 340, 758 S.W.2d at 428–29.

As in *Blakemore*, Corporal Dawson approached appellant's vehicle and observed appellant in the front seat, unconscious, with the motor running. After appellant failed to respond to Corporal Dawson knocking on his window, Corporal Dawson continued his community caretaking function in opening the unlocked door. The trial court specifically found that once Corporal Dawson opened the door, he smelled an odor of alcohol. Rule 3.1 of the Arkansas Rules of Criminal Procedure (2014) provides,

> A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has

committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. An officer acting under this rule may require the person to remain in or near such place in the officer's presence for a period of not more than fifteen (15) minutes or for such time as is reasonable under the circumstances. At the end of such period the person detained shall be released without further restraint, or arrested and charged with an offense.

Our courts have determined that a possible driving–while–intoxicated offense falls within the ambit of the rule. *Murrell v. State*, 2011 Ark. App. 311. Thus, after Corporal Dawson smelled the alcohol, Rule 3.1 permitted Corporal Dawson to detain appellant for further investigation, and the trial court properly denied appellant's motion to suppress.

Affirmed.

GLADWIN, C.J., and WHITEAKER, J., agree.

*Norwood & Norwood, P.A.*, by: *Jon Nelson*, *Alison Lee*, and *Doug Norwood*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jake H. Jones*, Ass't Att'y Gen., for appellee.