

**FILED**

Jun 30 2016, 9:06 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Suzy St. John
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Eduardo Cruz-Salazar,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | June 30, 2016<br><br>Court of Appeals Case No.<br>49A05-1511-CR-1782<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Kelly Noel Kinkade, Judge Pro Tempore<br><br>Trial Court Cause No.<br>49G14-1312-FD-81376 |

**Najam, Judge.**

## Statement of the Case

Eduardo Cruz-Salazar appeals his conviction for possession of cocaine, as a Class A misdemeanor, following a bench trial. He presents two issues for our review, which we consolidate and restate as whether the trial court abused its

discretion when it admitted into evidence the cocaine a police officer found on his person after his arrest for public intoxication.

[2] We affirm.

## Facts and Procedural History

[3] At approximately 6:42 a.m. on December 29, 2014, Indianapolis Metropolitan Police Department Officer Mark Ayler responded to a report of a suspicious vehicle, described as a blue or turquoise truck, that had been parked on the street in front of a residence at 5831 Sunwood Drive in Indianapolis for approximately thirty minutes. Upon his arrival at that address, Officer Ayler saw a blue Chevy Silverado truck parked on the street. Officer Ayler "shined [a] spotlight on the vehicle to see if anyone was inside the vehicle[,]" and he saw a man, later identified as Cruz-Salazar, sitting in the driver's seat. Tr. at 8. The man "appeared to be either sleeping or passed out." *Id.* Officer Ayler "approached the vehicle, tapped on the window a couple of times[,]" but Cruz-Salazar did not respond. *Id.* Accordingly, Officer Ayler "opened the door to check on [Cruz-Salazar's] welfare." *Id.*

[4] Once the door was open, Officer Ayler "shook [Cruz-Salazar] a little bit and made contact with him." *Id.* at 9. Officer Ayler asked Cruz-Salazar for his identification, which he provided. Officer Ayler noticed that Cruz-Salazar "had bloodshot, watery eyes" and "slurred speech[.]" *Id.* at 9-10. Officer Ayler asked Cruz-Salazar whether he had been drinking, and he responded that he had been drinking "a little bit." *Id.* at 10. Based on his training and experience,

Officer Ayler concluded that Cruz-Salazar was intoxicated. Indeed, after Officer Ayler asked Cruz-Salazar to exit the truck, Cruz-Salazar was "unsteady on his feet." *Id.* at 11. Officer Ayler asked Cruz-Salazar "how he [had gotten] there in the vehicle[,] and he stated [that] he did not remember." *Id.* Officer Ayler administered a portable breath test, and Cruz-Salazar registered a BAC of .184.

[5] "At that point, [Officer Ayler] tried to assist [Cruz-Salazar] in maybe calling someone to come and get him due to the [cold weather] and [because] he was very intoxicated[.]" *Id.* Cruz-Salazar gave Officer Ayler a phone number, but when Officer Ayler called that number, he got no answer. Officer Ayler then arrested Cruz-Salazar for public intoxication. During a search incident to that arrest, Officer Ayler found a "plastic baggie in his right front pant[s] pocket that contained a white powdery substance" that he suspected to be cocaine. *Id.* at 12. Subsequent tests confirmed that the substance was cocaine.

[6] The State charged Cruz-Salazar with possession of cocaine, as a Class D felony. Cruz-Salazar moved to suppress the evidence alleging that the search and seizure violated the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. The trial court denied that motion and, following a bench trial, found Cruz-Salazar guilty of possession of cocaine, as a Class A misdemeanor. The trial court entered judgment and sentenced Cruz-Salazar to 365 days, all suspended, and 180 days of probation. This appeal ensued.

# Discussion and Decision

## *Fourth Amendment and Article 1, Section 11*

[7] Cruz-Salazar contends that Officer Ayler violated his right to be free from an unreasonable search and seizure under the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. In particular, Cruz-Salazar maintains that Officer Ayler detained and questioned him without reasonable suspicion that he was engaged in or about to be engaged in criminal activity. The State contends that Officer Ayler's conduct was reasonable because Cruz-Salazar had no legitimate privacy interest when he was "publicly observed unconscious in a running pickup truck on the side of the road at 6:30 a.m." Appellee's Br. at 11. The State also contends that Officer Ayler's conduct was consistent with his community caretaking function and, as such, did not implicate Cruz-Salazar's rights under either the federal or state constitution. We agree with the State that the community caretaking function exception applies here.

[8] Cruz-Salazar is appealing from the trial court's admission of the evidence following a completed trial. A trial court is afforded broad discretion in ruling on the admissibility of evidence, and we will reverse such a ruling only upon a showing of an abuse of discretion. *Washington v. State*, 784 N.E.2d 584, 587 (Ind. Ct. App. 2003). An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Id.* We will not reweigh the evidence, and we consider conflicting evidence in the

light most favorable to the trial court's ruling. *Collins v. State*, 822 N.E.2d 214, 218 (Ind. Ct. App. 2005), *trans. denied*.

[9]     In *Clark v. State*, 994 N.E.2d 252, 260-62 (Ind. 2013), our supreme court set out the applicable law as follows:

> The Fourth Amendment to the U.S. Constitution protects persons from unreasonable search and seizure by prohibiting, as a general rule, searches and seizures conducted without a warrant supported by probable cause. U.S. Const. amend. IV; *Berry v. State*, 704 N.E.2d 462, 464-65 (Ind. 1998). As a deterrent mechanism, evidence obtained in violation of this rule is generally not admissible in a prosecution against the victim of the unlawful search or seizure absent evidence of a recognized exception. *Mapp v. Ohio*, 367 U.S. 643, 649-55 (1961) (extending exclusionary rule to state court proceedings). It is the State's burden to prove that one of these well-delineated exceptions is satisfied. *Berry*, 704 N.E.2d at 465.

[10]    In *Osborne v. State*, --- N.E.3d ---, 2016 WL2756467 *4 (Ind. Ct. App. May 12, 2016), *not yet certified*, this court explained the community caretaking exception to the Fourth Amendment as follows:

> The concept of a "community caretaking function" was first articulated in *Cady v. Dombrowski*, 413 U.S. 433, 441, 443 (1973), where, following an accident, officers conducted a warrantless search of an impounded vehicle in an effort to locate a firearm that the driver was known to possess in order "to protect the public from the possibility that a revolver would fall into untrained or perhaps malicious hands." There, the Supreme Court stated that due to

the extensive regulation of motor vehicles and traffic, and also because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office. Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature. Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.

*Id.* at 441. As further described by our supreme court, the community caretaking function "is 'a catchall for the wide range of responsibilities that police officers must discharge aside from their criminal enforcement activities.'" *Fair v. State*, 627 N.E.2d 427, 431 (Ind. 1993) (quoting *United States v. Rodriguez-Morales*, 929 F.2d 780, 785 (1st Cir.1991), *cert. denied*, 502 U.S. 1030 (1992)). Thus, "[t]he police are expected not only to enforce the criminal laws but also to aid those in distress, abate hazards, prevent potential hazards from materializing, and perform an infinite variety of other tasks calculated to enhance and maintain the safety of communities." *Id.*

The community caretaking function "is a narrow exception to the privacy protections of the Fourth Amendment." *Killebrew*[ *v. State*], 976 N.E.2d [775,] 782 [(Ind. Ct. App. 2012), *trans. denied*]. In Indiana, it has been applied as an exception to the warrant requirement only in cases where the police must conduct an inventory search because they are impounding a vehicle. *See, e.g., Woodford*[ *v. State*], 752 N.E.2d [1278,] 1281[ (Ind. 2001)];

*Jones v. State*, 856 N.E.2d 758, 762-63 (Ind. Ct. App. 2006), *trans. denied*. In those cases, the State is required to "demonstrate that: 'the belief that the vehicle posed some threat or harm to the community or was itself imperiled was consistent with objective standards of sound policing, and . . . the decision to combat that threat by impoundment was in keeping with established departmental routine or regulation.'" *Ratliff v. State*, 770 N.E.2d 807, 809-10 (Ind. 2002) (ellipsis in original) (quoting *Woodford*, 752 N.E.2d at 1281) (internal quotation marks omitted).

[11]    In *Osborne*, which, unlike prior Indiana decisions on this topic, did not involve the impoundment of a vehicle, we adopted a three-pronged analysis for evaluating claims of police community caretaker functions as set out by the Wisconsin Supreme Court in *State v. Kramer*, 759 N.W.2d 598, 605 (Wis. 2009). Under that analysis,

> a court must determine "(1) that a seizure within the meaning of the [F]ourth [A]mendment has occurred; (2) if so, whether the police conduct was bona fide community caretaker activity; and (3) if so, whether the public need and interest outweigh the intrusion upon the privacy of the individual." *Id.* (quoting *State v. Anderson*, 417 N.W.2d 411, 414 (Wis. Ct. App. 1987)). During the second step—i.e., whether the police conduct was bona fide community caretaker activity—"a court considers whether police conduct is 'totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.'" *Id.* at 606 (quoting *Cady*, 413 U.S. at 441). This determination is based on an examination of the totality of the circumstances as they existed at the time of the police officer's conduct. *Id.* at 608. While a police officer's subjective intent may be a factor to consider in the totality of the circumstances, when "an objectively reasonable basis for the community caretaker function is shown, that determination is not negated by the officer's subjective law enforcement concerns." *Id.* The third

step—the balance of public needs against individual privacy interests—assesses whether the officer's exercise of his/her community caretaker function was reasonable. *Id.* at 610. "The stronger the public need and the more minimal the intrusion upon an individual's liberty, the more likely the police conduct will be held to be reasonable." *Id.* at 611. Wisconsin courts consider the following factors in balancing these interests:

> (1) the degree of the public interest and the exigency of the situation; (2) the attendant circumstances surrounding the seizure, including time, location, the degree of overt authority and force displayed; (3) whether an automobile is involved; and (4) the availability, feasibility and effectiveness of alternatives to the type of intrusion actually accomplished.

> *Id.*

*Osborne*, 2016 WL2756467 at *6-7. Applying this test, the Wisconsin Supreme Court determined that an officer properly acted within his community caretaker function when he stopped to offer assistance to a driver who was parked on the side of the road with his hazard lights flashing. *Kramer*, 759 N.W.2d at 601, 612.

[12] Here, we disagree with the State's initial contention that no search or seizure within the meaning of the Fourth Amendment occurred. Cruz-Salazar, while parked in a public place, had *some* expectation of privacy while sleeping in his car. *See Myers v. State*, 839 N.E.2d 1146, 1152 (Ind. 2005) (noting individual has a reduced expectation of privacy in an automobile for Fourth Amendment purposes). But we agree with the State that the community caretaking

exception applies to Officer Ayler's conduct in opening the door to Cruz-Salazar's truck and shaking him to wake him up. Only after that point did Officer Ayler observe signs of intoxication. As we discuss below, Officer Ayler was justified in then investigating Cruz-Salazar's intoxication.

[13] Officer Ayler testified that he initially made contact with Cruz-Salazar out of concern for Cruz-Salazar's well-being. In particular, Officer Ayler testified as follows: Cruz-Salazar "appeared to be either sleeping or passed out"; after Cruz-Salazar did not respond to knocks on the window, Officer Ayler opened the door "to check on his welfare"; and Officer Ayler "didn't know why he was asleep [or] if there was a medical problem." Tr. at 8-9. In light of the totality of the circumstances, Officer Ayler's concern for Cruz-Salazar's well-being and his opening the door of the vehicle to check on Cruz-Salazar's well-being were reasonable, community caretaking activities. Indeed, in his reply brief, Cruz-Salazar acknowledges that Officer Ayler's conduct "was a 'community caretaker activity.'" Reply Br. at 7.

[14] However, Cruz-Salazar contends that, under the third prong of the *Kramer* test, as adopted by this court in *Osborne*, the "public need and interest in discovering why Cruz-Salazar slept in his car did not outweigh the intrusion into Cruz-Salazar's privacy." *Id.* at 8. We cannot agree.

[15] Again, with respect to the third prong, the *Kramer* court set out four additional factors in balancing the interests of the public and the police officer's caretaking duties: (1) the degree of the public interest and the exigency of the situation; (2)

the attendant circumstances surrounding the seizure, including time, location, the degree of overt authority and force displayed; (3) whether an automobile is involved; and (4) the availability, feasibility and effectiveness of alternatives to the type of intrusion actually accomplished. 759 N.W.2d at 611. Under the facts of the instant case, the public interest in checking on the welfare of someone who is not responsive to knocks on a window is high, as he could have been ill and in need of medical assistance, or he could have been intoxicated and about to drive off in the vehicle, which was running. Officer Ayler did not use any force with Cruz-Salazar and, in fact, unsuccessfully attempted to get him a ride home rather than arrest him. And Officer Ayler had no other means of making contact with Cruz-Salazar to check his welfare, as Cruz-Salazar was nonresponsive to his initial attempts at contact without opening the truck door.

[16] We hold that Officer Ayler's conduct did not violate Cruz-Salazar's Fourth Amendment right to be free from unreasonable search and seizure. *See, e.g.*, *Szabo v. State*, 470 S.W.3d 696 (Ark. Ct. App. 2015) (holding officer's conduct appropriate under community caretaking function and no Fourth Amendment violation where officer opened car door to wake defendant after observing him either "unconscious or sound asleep" in driver's seat of running vehicle and did not respond to knocks on the window). For these same reasons, we hold that Officer Ayler's conduct was reasonable under Article 1, Section 11 of the Indiana Constitution. *See, e.g.*, *Sowers v. State*, 724 N.E.2d 588, 591-92 (Ind. 2000).

*Probable Cause for Arrest*

Cruz-Salazar also contends that, aside from opening his car door, Officer Ayler did not have probable cause to arrest him for public intoxication. Indiana Code Section 7.1-5-1-3(a) provides in relevant part that it is a Class B misdemeanor for a person to be in a public place in a state of intoxication caused by the person's use of alcohol if the person: (1) endangers the person's life; (2) endangers the life of another person; (3) breaches the peace or is in imminent danger of breaching the peace; or (4) harasses, annoys, or alarms another person. Cruz-Salazar maintains that there was no reason for Officer Ayler to believe that Cruz-Salazar's conduct fell within one of those categories. The State, however, contends that the evidence shows that Officer Ayler "had probable cause that [Cruz-Salazar] had committed both public intoxication and operating a vehicle while intoxicated." Appellee's Br. at 19.

Probable cause for an arrest exists when the facts and circumstances known to the officer would warrant a reasonably prudent person to believe that the arrestee has committed the criminal act in question. *Jellison v. State*, 656 N.E.2d 532, 534 (Ind. Ct. App. 1995). The level of proof necessary to establish probable cause is less than that necessary to establish guilt beyond a reasonable doubt. *Id.* Probable cause, in fact, requires only a fair probability of criminal activity, not a prima facie showing. *Id.* Finally, probable cause may be established by evidence that would not be admissible at trial. *Id.*

In *Tin Thang v. State*, 10 N.E.3d 1256, 1260 (Ind. 2014), our supreme court held that the evidence was *sufficient to prove public intoxication* where

the undisputed evidence established the sudden presence of the defendant and his vehicle at a gas station, his intoxication, his possession of the car keys, and the absence of any other person, thus necessitating removal of the car by towing. From these facts, it is a reasonable inference that the defendant had arrived at the gas station by driving his automobile on the public streets while intoxicated, thereby endangering his or another person's life.

[20] Here, again, the State only had to show that there was a "*fair probability*" that Cruz-Salazar had operated his truck while intoxicated to establish probable cause to arrest him for public intoxication. *Jellison*, 656 N.E.2d at 534 (emphasis added). And we agree with the State that the evidence supports a determination that there was a fair probability that Cruz-Salazar committed public intoxication by having just driven while intoxicated. *Id.* Cruz-Salazar concedes that he was in a public place in a state of intoxication. And the evidence shows that he had been sitting in the driver's seat of a truck with the engine running for approximately thirty minutes before Officer Ayler arrived at the scene. Cruz-Salazar stated that he could not remember how he had gotten there, and his BAC was .184, more than twice the legal limit to operate a motor vehicle. Officer Ayler's arrest of Cruz-Salazar was supported by probable cause, and the search of his person was a valid search incident to arrest. The trial court did not abuse its discretion when it admitted into evidence the cocaine Officer Ayler found in Cruz-Salazar's pocket.

[21] Affirmed.

Robb, J., and Crone, J., concur.