# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 28 2020, 8:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ronald J. Moore
The Moore Law Firm, LLC
Richmond, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Myriam Serrano
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Jeffrey B. Flora,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 28, 2020

Court of Appeals Case No.
20A-CR-506

Appeal from the Wayne Superior Court

The Honorable Darrin M. Dolehanty, Judge

Trial Court Cause No.
89D03-1907-F5-81

**Mathias, Judge.**

[1] Jeffrey Flora ("Flora") was convicted in Wayne Superior Court of Level 5 felony causing death when operating a motor vehicle while intoxicated. Flora

appeals his conviction and argues that the evidence is insufficient to prove that he was intoxicated.

[2] We affirm.

## Facts and Procedural History

[3] On February 9, 2019, Flora and his girlfriend, Shelby Masters ("Shelby") were planning to travel to Muncie, Indiana with Shelby's mother, Sandra Morris ("Morris") and Morris's friend. Initially, Morris intended to pick up Flora and Shelby at Shelby's home at 1:30 p.m., then the group would travel to Muncie. Later, the plan changed. Flora and Shelby decided they would meet Morris and her friend at Morris's home, which was approximately ten minutes from Shelby's home. Morris still expected them to arrive around 1:30 p.m.

[4] Around 2:00 p.m., neighbors saw Flora and Shelby leaving Shelby's home on Flora's Harley Davidson motorcycle. One neighbor was surprised that the couple was traveling on a motorcycle because even though it was a sunny day, it was cold. The witnesses reported that Flora was driving the motorcycle and Shelby was riding behind him.

[5] Morris became concerned when Shelby and Flora did not arrive at her home as planned. She called their cellphones, but neither answered the call. Morris thought maybe they had trouble with the motorcycle. She and her friend began driving the route to Shelby's house to look for them.

[6] Approximately two miles from Shelby's home, Morris and her friend noticed the sun reflecting off the handlebars of a motorcycle. The motorcycle was lying off the road on an embankment near a bridge, which crossed a creek. From their position on the road, they could not see Flora or Shelby. Morris and her friend exited their vehicle and called 911 to report the crash. The 911 call was reported at 2:47 p.m.

[7] Morris walked toward the motorcycle and saw that it was "clear up on the embankment, as far as it could go." Tr. Vol. III, p. 117. Then she noticed that Flora and Shelby were lying in the creek approximately 15 to 20 feet away. Morris yelled their names, but they were unconscious and did not respond.

[8] Flora was lying on his back. He was breathing and moaning. Shelby was lying face down and her torso was partially lying on top of Flora. Morris could not feel Shelby's pulse. Morris, her friend, and an individual who stopped to help, carefully rolled Shelby off of Flora and onto her back. They performed CPR on Shelby before the paramedics and law enforcement arrived approximately ten minutes after they placed the 911 call.

[9] Shelby suffered a cervical fracture to her neck upon impact with the ground and died immediately as a result of blunt force trauma. She was pronounced dead at the scene of the accident. Flora was transported to a hospital via helicopter.

[10] Wayne County Sheriff's Department investigator Seth Biava ("Officer Biava") was informed that a baggie containing over five grams of marijuana was found near the scene of the accident. He obtained a search warrant for a blood draw,

and Flora's blood was drawn at approximately 5:30 p.m. Flora's blood ethanol level was .105. He also testified positive for the presence of delta-9 carboxy THC and delta 9 THC, and Midazolam, a benzodiazepine. Tr. Vol. II, p. 204; Ex. Vol., State's Ex. 32.

[11] On July 10, 2019, Flora was charged with Level 5 felony causing death when operating a motor vehicle while intoxicated, Level 5 felony causing death when operating a motor vehicle with a schedule I or II controlled substance in the blood, and Level 5 felony causing death when operating a motor vehicle with an ACE of .08 or more. Flora's jury trial commenced on January 22, 2020. Flora presented two defenses: that Shelby was driving the motorcycle and that he was not intoxicated when the accident occurred.

[12] Toxicologist Dr. Shelia Arnold testified that a person will start to show impaired judgment and slowed information processing with a blood alcohol level of .04. Tr. Vol. II p. 208. She stated that Flora was impaired when his blood was drawn and the THC in Flora's system was affecting his brain. *Id.* at 210-15. She explained that the combination of alcohol and Midazolam can increase the level of a person's impairment. *Id.* at 210. Dr. Arnold also stated that she could not determine Flora's precise blood alcohol level at the time of the accident, and his BAC was possibly below .08 depending on various circumstances. Tr. Vol. 2, pp. 224-25.

[13] After the State presented its evidence, Flora moved for a directed verdict on all three counts. The trial court denied the motion with regard to Counts I and II,

but granted the motion as to Count III, Level 5 felony causing death when operating a motor vehicle with an ACE of .08 or more. The jury returned a guilty verdict on the remaining two counts.

[14] The trial court determined that the two counts should be merged and entered a judgment of conviction on Count I, Level 5 felony causing death when operating a motor vehicle while intoxicated. Flora was ordered to serve five years and ten months in the Department of Correction. Flora now appeals.

## Discussion and Decision

[15] Flora argues that the evidence was insufficient to prove that he was intoxicated and that his driving conduct resulted in Shelby's death. Upon review of a challenge to the sufficiency of the evidence to support a criminal conviction, we respect the fact-finder's exclusive province to weigh conflicting evidence. *Miller v. State*, 106 N.E.3d 1067, 1073 (Ind. Ct. App. 2018) (citing *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005)), *trans. denied*. We therefore neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* Instead, we consider only the probative evidence and reasonable inferences supporting the judgment. *Id.* Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007) (quotation omitted).

[16] On the date of the accident at issue in this appeal, Indiana Code section 9-30-5-5(a)(3) provided that "[a] person who causes the death or catastrophic injury of another person when operating a vehicle . . . while intoxicated . . . commits" a

Level 5 felony.[1] Indiana Code section 9-13-2-86 defines intoxicated in pertinent part as:

> under the influence of:
>
> (1) alcohol
>
> (2) a controlled substance (as defined in IC 35-48-1);
>
> (3) a drug other than alcohol or a controlled substance;
>
> (4) a substance described in IC 35-46-6-2 or IC 35-46-6-3; [or]
>
> (5) a combination of substances described in subdivisions (1) through (4) . . .
>
> so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties.

[17] Flora claims that the toxicologist's testimony was the only evidence of intoxication, which was insufficient to establish that he was impaired at the time of the accident. He argues that "it is purely speculation as to what Flora's blood alcohol content was at the time of the accident." Appellant's Br. at 16. He also claims that it is unreasonable to conclude that his driving conduct caused the motorcycle crash because the "record is devoid of Flora's driving conduct entirely." *Id*. at 18.

---

[1] The statute was amended on July 1, 2019 and the offense is now categorized as a Level 4 felony. I.C. § 9-30-5-5(a).

[18] The crash occurred on a sunny day with clear road conditions in the middle of the afternoon. From the evidence presented, it was reasonable for the jury to infer that no other vehicles were involved in the accident. Flora operated the motorcycle causing it to leave the roadway and travel twenty-five to thirty feet uphill on an embankment. Tr. Vol. 3, p. 73.

[19] Based on his physical condition following the accident, his blood test results and the toxicologist's testimony, it was reasonable for the jury to infer that Flora consumed alcohol prior to the accident. Flora's blood draw was performed between three and four hours after the accident occurred.[2] Flora's blood ethanol alcohol level was .105.

[20] Dr. Arnold testified that "ethanol has a wide range of effects" on the human body. Tr. Vol. 2, p. 208.

> As you consume an alcoholic beverage, it is absorbed into your body, and distributed throughout the water in your body. So the more water content that you have, the more it's able to distribute through your body. So men have more water than women do, so it's able to distribute better in men. As it's distributed throughout your body, one of the areas that it goes to is the brain, and the brain is where that interaction occurs. So at the low concentrations, you will have impaired judgment, slowed information processing. This will occur around a point zero, four (.04) to a point zero, five (.05) grams per 100 milliliters. The next stage that will occur, is impaired vision and auditory. So you'll have blurred vision, slowed interpretation of what you actually

---

[2] The accident likely occurred around 2:00 p.m. The 911 call was placed at 2:47 p.m. Flora's blood was drawn after the search warrant was obtained at 5:29 p.m. Tr. Vol. 3, p. 98.

see, to a reaction that you can respond to. . . . The next stage would be—you would start to have deficiencies in your fine motor skills, and your gross motor skills. At this state is where most people consider somebody to be drunk or intoxicated, but the impairment occurred at lower concentrations. So this would be someone stumbling around, unable to have a coordinated gait, stand up. And then the next stage would be decreased awareness of your surroundings. This is a person that is sitting there, staring off into space, not really aware of their surroundings, maybe in a stupor, or fall asleep.

Tr. Vol. 2, pp. 208-09. Dr. Arnold also testified that delta-9 THC, a schedule one controlled substance, causes impairment.[3] Tr. Vol. 2, p. 215.

[21]    Dr. Arnold could not testify as to Flora's precise blood alcohol level at the time of the crash. And she stated that that it was possible that his blood alcohol level at the time of the crash was below .08 depending on various circumstances. Tr. Vol. 2, pp. 224-25. But "proof of intoxication may be established by showing impairment, and . . . does not require proof of a [BAC] level." *Ballinger v. State*, 717 N.E.2d 939, 943 (Ind. Ct. App. 1999). Moreover, circumstantial evidence is sufficient to prove that the defendant operated the vehicle while intoxicated. *Jellison v. State*, 656 N.E.2d 532, 535 (Ind. Ct. App. 1995).

---

[3] In his brief, Flora argues that it is possible that Midazolam, an anti-anxiety medication, could have been given to him by medical personnel after the accident but before the blood draw. Appellant's Br. at 15. It was reasonable for the jury to infer that Flora consumed alcohol and marijuana prior to the crash. But, Flora's argument with regard to the Midazolam is not without merit. Therefore, we will not consider the presence of Midazolam in his blood in our resolution of the issue on appeal.

[22] The jury reasonably inferred that Flora consumed alcohol before the accident in an amount that resulted in a blood alcohol level of .105 three to four hours after the accident occurred. Flora crashed his motorcycle while operating it on a roadway in the middle of the afternoon on a sunny day. There was no evidence that any other vehicles were involved in the accident. This evidence is sufficient to prove that Flora was intoxicated when the accident occurred and his impaired operation of the motorcycle caused the accident.[4]

[23] For all of these reasons, we affirm Flora's Level 5 felony causing death when operating a motor vehicle while intoxicated conviction.

[24] Affirmed.


Bradford, C.J., and Najam, J., concur.

---

[4] For this same reason, we conclude that the trial court properly denied Flora's request for a directed verdict on this charge. *See Huber v. State*, 805 N.E.2d 887, 890 (Ind. Ct. App. 2004) (stating that if the evidence is sufficient to support a conviction on appeal, then the trial court's denial of a motion for a directed verdict cannot be in error).